[This opinion has been published in *Ohio Official Reports* at 89 Ohio St.3d 575.]

HESTER, NATURAL FATHER & NEXT FRIEND OF HESTER, A MINOR, APPELLANT,

*v*. DWIVEDI ET AL., APPELLEES.

[Cite as *Hester v. Dwivedi*, 2000-Ohio-230.]

*Torts—Negligence—Child born with physical or other handicaps does not state a cause of action in medical negligence based upon the failure of a doctor to inform the child's mother during pregnancy of test results indicating a possibility that the child would be born with defects.*

A child born with physical or other handicaps does not state a cause of action in medical negligence based upon the failure of a doctor to inform the child's mother during her pregnancy of test results indicating a possibility that the child would be born with defects, thereby depriving the mother of the opportunity to make a fully informed decision as to whether to obtain a legal abortion.

(No. 99-683—Submitted January 26, 2000—Decided September 6, 2000.)

APPEAL from the Court of Appeals for Hamilton County, No. C-970723.

_____

{¶ 1} Lawrence and Patricia Hester initiated this action by filing a complaint asserting medical negligence claims against various defendants, including appellees Leela Dwivedi, M.D., Luis R. Saldana, M.D., and Dwivedi & Dwivedi, M.D., Inc. The Hesters alleged that the defendants did not adhere to required standards of care during Patricia's pregnancy prior to the birth in 1993 of their daughter, Alicia Hester. Lawrence also asserted claims on behalf of Alicia in his capacity as her natural father and next friend, and this appeal concerns only those claims.

{¶ 2} As is relevant herein, the Hesters alleged that Patricia employed Drs. Dwivedi and Saldana to provide her with prenatal care. The Hesters claimed that Patricia underwent multiple prenatal tests, including ultrasound, alpha-fetoprotein

("AFP") blood testing, and amniocentesis in the course of her pregnancy. The Hesters claimed that appellees breached the required standard of care in negligently informing, or failing to inform, them of the prenatal testing results. They further alleged that the test results showed positive indicators of birth defects in the fetus Patricia was carrying, and that their daughter, Alicia, was, in fact, born with spina bifida and other complications. The Hesters further asserted that Alicia will incur medical expenses, wage loss, impairment of earning capacity, and pain and suffering as an adult in the future as the direct and proximate result of the defendants' negligence.

{¶ 3} Ultimately, appellees moved for judgment on the pleadings pursuant to Civ.R. 12(C). Appellees argued that, under Ohio law, Alicia Hester had no right to recover damages associated with her genetic abnormalities, in that Ohio does not recognize a claim for "wrongful life." Quoting *Azzolino v. Dingfelder* (1985), 315 N.C. 103, 107, 337 S.E.2d 528, 531, they characterized a wrongful life claim as a "claim for relief by or on behalf of a defective child who alleges that but for the defendant's negligent treatment or advice to its parents, the child would not have been born."

{¶ 4} Appellees further moved for judgment on the pleadings in their favor as to the claims of Alicia's parents.

{¶ 5} The trial court granted the appellees' motions for judgment on the pleadings as to the claims of the minor, Alicia, but denied their motions as to the claims of Lawrence and Patricia Hester. The trial court found no just reason for delay of appeal of that ruling.

{¶ 6} Accordingly, in his capacity as natural father and next friend of Alicia Hester, Lawrence Hester appealed the trial court's order entering judgment in favor of the appellees as to his daughter's claims against them. The court of appeals affirmed.

{¶ 7} The cause is before this court upon the allowance of a discretionary appeal.

---

*Santen & Hughes* and *John D. Holschuh, Jr.; Gehrig, Gelwicks & Eynon* and *Thomas A. Gelwicks*, for appellant.

*Roetzel & Andress*, *Ann Ruley Combs* and *Karen A. Caroll*, for appellee Leela Dwivedi, M.D.

*Lindhorst & Dreidame* and *Michael F. Lyon*, for appellee Luis Saldana, M.D.

*Mark Stephen Lally,* urging affirmance for *amicus curiae* Ohio Right to Life Society, Inc.

*Lancione & Lancione, P.L.L.*, and *John A. Lancione*, urging reversal for *amicus curiae* Ohio Academy of Trial Lawyers.

---

**MOYER, C.J.**

{¶ 8} The sole issue presented in this appeal is whether Alicia's wrongful life claims are sufficient to withstand a motion for judgment on the pleadings filed pursuant to Civ.R. 12(C). We hold that they are not.

{¶ 9} Pursuant to Civ.R. 12(C), Alicia is entitled to have all the material allegations in her complaint, with all reasonable inferences to be drawn therefrom, construed in her favor as true. *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 165-166, 63 O.O.2d 262, 264, 297 N.E.2d 113, 117, citing 2A Moore's Federal Practice (1965) 2342, Paragraph 12.15; 5 Wright & Miller, Federal Practice and Procedure (1969), Section 1368. Moreover, although significant discovery had taken place prior to the time appellees filed their Civ.R. 12(C) motions, the trial court could not properly consider any evidentiary material tending to disprove the complaint's allegations in deciding the motions. Rather, entry of judgment pursuant to Civ.R. 12(C) is only appropriate "where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support

of his claim that would entitle him to relief." *State ex rel. Midwest Pride IV, Inc. v. Pontious* (1996), 75 Ohio St.3d 565, 570, 664 N.E.2d 931, 936.

{¶ 10} In her complaint, Alicia alleges that appellees Drs. Dwivedi and Suldana received test results while her mother was pregnant that indicated a possibility that the fetus she was carrying was not developing normally, so that, if the pregnancy continued, the child (Alicia) would be born with congenital abnormalities. Alicia asserts that, because the pregnancy was not terminated, she was in fact born, and born with severe physical and neurological deficits. She claims that she will be "forced to incur extraordinary medical and educational expenses throughout the course of her life," for which the appellees should be held liable. She suggests that her mother would have terminated the pregnancy had her parents been advised of the test results, so that she, Alicia, would not have been born and would never incur extraordinary medical and other costs. These allegations are either alleged in the complaint or are reasonable inferences from it. We accept them as true for purposes of reviewing appellees' motions for judgment on the pleadings.

{¶ 11} This court has previously disposed of cases bearing factual similarities to the one at bar. While these types of cases are commonly labeled "wrongful life," "wrongful pregnancy," "wrongful birth," or "wrongful living" actions, they are not governed by statutory law as are wrongful death actions. They remain, at their core, medical negligence actions, and are determined by application of common-law tort principles.

{¶ 12} As have other courts and commentators, we recognize that overreliance on terms such as "wrongful life" or "wrongful birth" creates the risk of confusion in applying principles of tort law to actual cases, and may compound or complicate resolution of the case. See *Greco v. United States* (1995), 111 Nev. 405, 409, 893 P.2d 345, 348, fn. 5, citing Capron, Tort Liability in Genetic Counseling (1979), 79 Col.L.Rev. 618, 634, fn. 62. Designating cases in this manner does serve a purpose in providing a shorthand description of the kinds of facts asserted by the plaintiffs.

4

Nevertheless, determining that the instant case presents a "wrongful life" claim does not confer a special legal status on it, nor change the traditional legal analysis used to determine its merits.

{¶ 13} Rather, such cases are properly decided by applying the same legal analysis employed in any medical negligence claim. As in negligence claims in general, liability based on the alleged negligence of a professional requires proof of the following elements: duty running from the defendant to the plaintiff, breach of duty by that defendant, damages suffered by the plaintiff, and a proximate cause relationship between the breach of duty and the damages.

{¶ 14} In *Bowman v. Davis* (1976), 48 Ohio St.2d 41, 2 O.O.3d 133, 356 N.E.2d 496, we first recognized a right for parents to recover where medical negligence resulted in the birth of children. Our holding was confined to a determination that public policy did not preclude parents from bringing an action in tort against medical providers following a negligently performed and unsuccessful sterilization procedure. Such an action is generally characterized as presenting a "wrongful pregnancy" claim.

{¶ 15} Similarly, in *Johnson v. Univ. Hosp. of Cleveland* (1989), 44 Ohio St.3d 49, 540 N.E.2d 1370, the plaintiff, a mother, alleged that her doctors negligently performed a tubal ligation, which she had undergone in order to avoid future pregnancies. When she nevertheless became pregnant and delivered a healthy baby girl, she sought damages for pain and suffering arising out of the pregnancy and birth, for injury to her person caused by the increased care, responsibility, and work involved in raising the child, and for the expenses of raising the child.

{¶ 16} In *Johnson* we held that Ohio does not allow the award of damages for child-rearing expenses in a wrongful pregnancy action brought by parents. "[I]n a 'wrongful pregnancy' action, Ohio recognizes the 'limited damages' rule which limits the damages to the pregnancy itself and does not include child-rearing expenses. The extent of recoverable damages is limited by Ohio's public policy that the birth of a

normal, healthy child cannot be an injury to her parents." *Id.* at paragraph two of the syllabus.

{¶ 17} Today we are presented with an action presenting the legal issue of whether an individual who was not born as a normal, healthy child, but rather as a child with birth defects, has herself suffered legally compensable injury in that she was born rather than aborted. In short, we are asked to hold that such a child may recover damages for the "injury" of having been born.

{¶ 18} In both *Bowman* and *Johnson*, the plaintiffs were parents seeking damages after failed sterilizations. In neither case did the children who were born in spite of the failed sterilization procedures make claims themselves. In *Bowman* we did, however, distinguish between wrongful pregnancy cases, brought by parents, and wrongful life cases, brought by children. We noted that "[b]ecause [wrongful life] claims force courts to weigh the value of being versus nonbeing, courts have been reluctant to recognize this cause of action." *Bowman*, 48 Ohio St.2d at 45, 2 O.O.3d at 135, 356 N.E.2d at 499, fn. 3.

{¶ 19} In 1993 the Court of Appeals for Washington County affirmed judgment on the pleadings against a minor child born with spina bifida who asserted a wrongful life claim similar to Alicia's. After considering existing Ohio precedent, the court determined that it was "not prepared to say that life, even with severe disabilities, constitutes an actionable injury." *Flanagan v. Williams* (1993), 87 Ohio App.3d 768, 776, 623 N.E.2d 185, 191. As a result, the child's claim failed, under traditional negligence analysis, for failure to allege legally cognizable damages.

{¶ 20} More recently, in *Anderson v. St. Francis-St. George Hosp., Inc.* (1996), 77 Ohio St.3d 82, 671 N.E.2d 225, we considered a medical negligence case characterized as a "wrongful living" case. In *Anderson*, an elderly patient was resuscitated by a hospital nurse during a ventricular tachycardia event. The nurse defibrillated the patient, despite his having previously directed his physicians not to perform extraordinary efforts to preserve his life, and the resultant entry of "No Code

Blue" instructions on his chart. After his revival, the patient suffered a stroke, rendering him partially paralyzed until his death nearly a year later. We held that the medical professionals sued by the patient's administrator were entitled to summary judgment.

{¶ 21} In *Anderson* we recognized that a medical professional has a legal duty to respect the expressed wishes of a patient to refuse unwanted medical treatment. We also accepted, for purposes of our review of a summary judgment, that Anderson had demonstrated a genuine issue as to whether the medical defendants had breached that duty. However, Anderson's claim failed for lack of demonstrating a genuine issue as to the remaining negligence components: damages and causation.

{¶ 22} The crux of Anderson's claim was the assertion that patient Wilson had suffered injury in that the length of his life had been prolonged against his will as a result of a breach of professional duty. We held that the law does not sanction an award of damages based on the relative merits of " 'being versus nonbeing.' " *Anderson* at 85, 671 N.E.2d at 228, quoting *Bowman*, 48 Ohio St.2d at 45, 2 O.O.3d at 135, 356 N.E.2d at 499, fn. 3. We cited with favor the opinions of other courts that human life cannot be a compensable harm, as the benefits of life should not be outweighed by the expense of supporting it; that courts are not equipped to assume the tasks of comparing the value of life in an impaired state and nonexistence; and that life, however impaired and regardless of any attendant expenses, cannot rationally be said to be a detriment when compared to the alternative of nonexistence. *Id.*, citing *Cockrum v. Baumgartner* (1983), 95 Ill.2d 193, 201, 69 Ill.Dec. 168, 172, 447 N.E.2d 385, 389; *Becker v. Schwartz* (1978), 46 N.Y.2d 401, 412, 413 N.Y.S.2d 895, 900, 386 N.E.2d 807, 812; *Lininger v. Eisenbaum* (Colo.1988), 764 P.2d 1202, 1212. In short, we recognized that the status of being alive simply does not constitute an injury. That holding was in full accord with our precedent in *Bowman* and *Johnson*.

{¶ 23} In reaching this conclusion we recognized that the American civil justice system imposes outer bounds of causation, even where an event certainly

would not have happened but for another's breach of a required standard of care. Accordingly, in *Johnson* we quoted Prosser & Keeton, as follows:

" ' "Proximate cause" ' —in itself an unfortunate term—is merely the limitation which the courts have placed upon the actor's responsibility for the consequences of the actor's conduct. In a philosophical sense, the consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events, and beyond. But any attempt to impose responsibility upon such a basis would result in infinite liability for all wrongful acts, and would "set society on edge and fill the courts with endless litigation." As a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability. Some boundary must be set to liability for the consequences of any act, upon the basis of some social idea of justice or policy.

" 'This limitation is to some extent associated with the nature and degree of the connection in fact between the defendant's acts and the events of which the plaintiff complains. Often to greater extent, however, the legal limitation on the scope of liability is associated with policy—with our more or less inadequately expressed ideas of what justice demands * * *.' (Footnote omitted.) Prosser & Keeton, Law of Torts (5 Ed.1984) 264, Section 41." *Johnson*, 44 Ohio St.3d at 57, 540 N.E.2d at 1377.

{¶ 24} In view of this precedent, we consider whether Alicia Hester could prove any set of facts justifying her recovery of damages based on the conduct of the appellee doctors. We find that she could not. As in *Anderson*, Alicia's claims fail for lack of asserting facts demonstrating the negligence elements of damages and causation.

{¶ 25} We initially observe that the vast majority of jurisdictions that have considered wrongful life claims similar to Alicia's have refused to recognize them. See, generally, *Siemieniec v. Lutheran Gen. Hosp.* (1987), 117 Ill.2d 230, 238-253,

111 Ill.Dec. 302, 307-314, 512 N.E.2d 691, 696-703.  See, also, *Williams v. Univ. of Chicago Hosp.* (1997), 179 Ill.2d 80, 85, 227 Ill.Dec. 793, 796, 688 N.E.2d 130, 133, where the Supreme Court of Illinois characterized judicial rejection of wrongful life claims brought by children as "nearly universal."

**{¶ 26}** It is undisputed that Alicia's spina bifida condition commenced at or near the time of conception, and that appellees neither caused that condition itself, nor could they have treated either Patricia or Alicia so as to allow Alicia to be born without spina bifida. Thus, the only injury causally related to the appellees' breach of duty was the deprivation of the chance to make a fully informed decision whether to continue the pregnancy.  That decision, legally, belonged to Patricia Hester. *Roe v. Wade* (1973), 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147.  Had she been given the information at issue she would have had two options: continue the pregnancy or abort the pregnancy.

**{¶ 27}** It is implicit in Alicia's argument that appellees should be held liable to her mother Patricia, based on breach of the duty to convey the negative test results to Patricia and that Alicia herself was injured by that breach.  Because the Hesters assert that Patricia would have opted for abortion, adoption of the proposition that Alicia was thus injured would necessitate our acceptance of the proposition that abortion, therefore nonexistence, would have been better for Alicia than life accompanied by physical and/or mental deficiencies.  We would, in effect, be making a judicial determination that the trial court is able to adjudicate that it would have been better for Alicia had she not been born.  The issue is compounded by the fact that it is not Alicia herself who asserts that she would have preferred not to have been given life, but her father, whom the law permitted to speak for her.

**{¶ 28}** The proposition that it would have been better for Alicia to have not been given life is inconsistent with our recognition of the value of life, as reflected in the holding in *Anderson* and other precedent. It also would place the court in the position of comparing the value of being, albeit with handicaps, versus nonbeing.

**{¶ 29}** We remain committed to the proposition, as recognized in *Bowman*, that such weighing falls within the ambit of moral, philosophical, and religious considerations rather than judicial. Judges and jurors are no more able to judge the value of a life with disabilities versus nonbeing than they are able to judge the value of life in a "normal" condition (however that might be defined) versus nonbeing. We therefore reject the Hesters' suggestion that Alicia suffered damage based on the fact of her being born rather than aborted.

**{¶ 30}** Similarly, Alicia's claim fails for lack of demonstrating the negligence element of causation. Had Patricia been told that her fetus might be born with spina bifida, she would, under current law, have been legally entitled to an abortion. Abortion would, of course, have relieved the Hesters from the joys and benefits of parenthood, as well as the financial obligations associated with parenthood. If appellees failed to provide Patricia with the disconcerting test results, as alleged in the complaint, Patricia can claim to be injured in that she was deprived of the choice to avoid those expenses by terminating the pregnancy. But that issue is not presented in this appeal.

**{¶ 31}** Moreover, no person has control over the occurrence or nonoccurrence of his or her own birth. In contrast to a pregnant woman who is unwilling or unable to undertake the burdens, both financial and nonfinancial, associated with the care of an impaired child, and therefore decides to terminate her pregnancy, the child herself does not have an option to decide whether or not it will be born. He or she is no worse off as a result of a medical provider's breach of duty to her mother than if the test results had been conveyed, yet the mother decided to continue the pregnancy. As cogently summarized in *Schloss v. Miriam Hosp.* (Jan. 11, 1999), R.I.Super. No. C.A. 98-2076, unreported, 1999 WL 41875, "The child's claim for damages, characterized as a wrongful life claim, has a different frame of reference from his parents' claim. Assuming that the defendants were negligent in failing to diagnose the genetic risk to which he was exposed, the only way in which his injury could have been prevented

would have been a timely abortion decision by his female parent. But the choice whether or not to conceive him, and to carry him as a fetus to his birth, was never his. He would have had no claim against anyone, if his parents had knowingly decided to allow him to be born in spite of a genetic certainty that he would be afflicted with his dreadful disease."

{¶ 32} In short, the injury allegedly suffered by Patricia (deprivation of opportunity to make an informed choice to terminate a pregnancy) is conceptually different from the injury that Alicia asserts (her birth with defects). Liability in negligence is dependent upon the existence of a proximate cause relationship between breach of duty and injury suffered. Alicia argues, in effect, that appellees' breach of duty caused her birth with defects. But a "birth with defects" is composed of two separate components: birth and defects. We accept as a reasonable inference from the complaint Patricia's assertion that she would have aborted had she been provided the test results, and we thus further accept the premise, on this review of a motion for judgment on the pleadings, that appellees' breach caused Alicia to be born. However, that breach did not, in any way, cause Alicia's medical handicaps.

{¶ 33} The law of negligence does not hold a defendant liable for damages that the defendant did not cause. The Hesters concede that Alicia's spina bifida was not caused by anything the appellees did. It is certainly true that Alicia would never incur extraordinary living expenses had Patricia undergone an abortion, as Alicia would never have existed as a living being. But we find, consistent with *Johnson* and *Anderson,* and as described by Prosser, *supra*, that the fact that Alicia is handicapped is not so closely connected with the appellees' breach of duty as to justify imposition of liability on these appellees.

{¶ 34} It is an unfortunate fact that Alicia was born with spina bifida. Medical science could not have changed this fact. She would either be born with that condition or not born at all. The crux of her complaint as asserted by her father is that she was born at all. That being the case, Alicia could recover, if at all, based only on the fact

that she is now alive, albeit with spina bifida. The common law of Ohio, as in the vast majority of American jurisdictions, does not authorize such a recovery.

{¶ 35} Accordingly, we hold that a child born with physical or other handicaps does not state a cause of action in medical negligence based upon the failure of a doctor to inform the child's mother during her pregnancy of test results indicating a possibility that the child would be born with defects, thereby depriving the mother of the opportunity to make a fully informed decision as to whether to obtain a legal abortion.

{¶ 36} The trial court properly granted judgment on the pleadings in favor of appellees, and, accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

F.E. SWEENEY, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS and RESNICK, JJ., dissent.

PFEIFER, J., dissents.

_____

**PFEIFER, J., dissenting.**

{¶ 37} This case challenges the ability of the legal system to handle a series of difficult moral, ethical, and legal questions. Our existing jurisprudence does not offer adequate answers. But it is the very nature of the common law that it develop, and that it build bridges between resolved areas of the law and new areas of concern that arise out of social shifts or advances in science and technology.

{¶ 38} This is a complicated case, but at the same time is not complicated enough. The issues it raises should not be dealt with in the abstract. The development of the facts here is not equal to the task of dealing with a case of this magnitude. Alicia's claim deserves a trial, so that the parties can develop a factual record for us to examine and extrapolate from. We ought to accumulate all the resources we have at our disposal to resolve this issue. We diminish the jurisprudence of this state to do otherwise.

{¶ 39} New legal theories should be tested, but not in a vacuum. This is a responsibly pled case, and Alicia's claim is closely tied to those of her parents, claims that no one seems to argue are invalid. Alicia's and her parents' claims should be tried together. In an area of law where closely related claims are allowed, we should see how a case like this might play out, and how the claims might fit together in order to avoid wholly inadequate or inappropriate compensation. If the claims are tried together, a jury can sort them out and give a reviewing court a better ability to determine what claims should and should not be recognized.

{¶ 40} It is the natural progression of the law that important claims go unrecognized before being adopted by courts. In the end, we might not agree with the plaintiff's theory of recovery. But the issue and proposed claim are important enough that we ought to allow a jury the opportunity to work its way through the matter. Before *Gallimore v. Children's Hosp. Med. Ctr.* (1993), 67 Ohio St.3d 244, 617 N.E.2d 1052, Ohio's common law did not recognize a parent's cause of action for loss of consortium based upon his or her child's injury. That case was allowed to proceed to a jury, and the jury was able to sort out the compensability issues. And we saw a real-life case where the concept of loss of filial consortium made perfect sense. The plaintiff parent truly did suffer an injury when a doctor's negligence rendered her child deaf. But before her case was allowed to play itself out in the legal system, she had no recognizable right to recovery. It was an easy step for us to recognize the parent's claim because trial judge allowed the case to go forward and the jury did a very credible job in awarding compensation for what was a previously unrecognized claim.

{¶ 41} This case is not about the worth of special-needs children, it is about the financial cost of raising a child, and what happens to the child who is unable to pay for his or her own needs once he or she reaches the age of majority. If we allow parents to recover for negligent genetic counseling, it may make pragmatic sense that the child's claim also be allowed. Only if the damage award goes to the child,

with oversight by the probate court, can we be certain that the child's expenses are being paid. The child's injury would be the focus of any damages, and thus the treatment of that injury should be the focus of any award.

{¶ 42} The labeling of a cause of action as "wrongful life" cheats a plaintiff. Neither her parents nor the child herself claims that the life of the child is a wrong. Parents are not suing to avoid having to provide love and care to a child with special needs. Children are not suing because they have a difficult life. Children and parents sue because there is a very real financial cost that is intertwined in their lives because of allegedly negligent medical care.

{¶ 43} Might it not be injudicious of this court to assume that a lifetime of dependence is not an injury? None of us will ever know what it is like to be Alicia Hester. We cannot know what might go through her mind in her most private of moments, or what she might think about herself in moments of honest self-appraisal.

{¶ 44} While we all owe our lives to the efforts of the many who preceded us, those of us who can lead eventually normal and independent lives can forget, on the surface at least, our continued debt to those people. However, the less fortunate can be weighed down by the constant reminder of complete dependence. Might there be a proper claim of negligent infliction of emotional distress for plaintiffs like Alicia against doctors who negligently perform prenatal testing?

_____