607 S.E.2d 63

**Jennie WILLIS, as guardian ad litem for Thomas Willis, a minor under the age of fourteen years, Appellant,**

v.

**Donald S. WU, M.D., and Donald S. Wu., M.D., P.A., Respondents.**

**No. 25915.**

Supreme Court of South Carolina.

Heard Nov. 4, 2004.
Decided Dec. 20, 2004.

O. Fayrell Furr, Jr. and Karolan F. Ohanesian, both of Furr, Henshaw & Ohanesian, of Myrtle Beach, and Glenn V. Ohanesian of Ohanesian & Ohanesian, of Myrtle Beach, for Appellant.

Stephen Brown, John Hamilton Smith, and D. Jay Davis, Jr., all of Young, Clement, Rivers & Tisdale, of Charleston, for Respondents.

Justice BURNETT:

In this appeal, we are asked to decide the novel issue of whether South Carolina will recognize a common law cause of action for "wrongful life" brought by or on behalf of a child born with severe congenital defects. This case was certified for review from the Court of Appeals pursuant to Rule 204(b), SCACR. We decline to recognize such a cause of action.

## FACTUAL AND PROCEDURAL BACKGROUND

Jennie Willis (Mother), in her capacity as guardian ad litem for her minor son, Thomas Willis (Child), brought a "wrongful life" action on behalf of Child against Donald S. Wu (Physician). Child alleges, because Physician failed to adequately and timely diagnose his condition by prenatal testing and inform Mother the results, Mother was denied the opportunity to decide whether to terminate the pregnancy while legally allowed to do so. *See* S.C.Code Ann. §§ 44–41–10 to –85

(2002) (prohibiting abortions after the twenty-fourth week of gestation unless two unrelated physicians certify in writing it is necessary to preserve the life or health of the mother).

Specifically, Child alleges Physician was negligent in failing to timely perform or comprehend the significance of ultrasound examinations which indicated the presence of hydrocephalus in the fetus, a congenital defect that in Child's case had devastating consequences. Child's medical experts testified Physician and his ultrasound technician failed to diagnose Child's condition and inform Mother in time for her to decide whether to terminate the pregnancy.

Child was born with maximal hydrocephalus, a condition in which the cerebral hemispheres of his brain are missing. Those areas of the brain control thinking, motor control, the ability to speak and move voluntarily, and the ability to interact with others. A CT scan of Child's head at birth showed a very large head filled with fluid, with brain tissue seen only in the frontal and temporal lobes and a brain stem. Physicians placed a shunt in Child's head at birth to drain the fluid and prevent his head from growing larger.

Mother is the primary caregiver for Child, who is now eight years old. Child receives various forms of therapy at home and school. He will never be able to care for himself independently. His physical condition and mental abilities are about the same as they were at the age of a few months.

The circuit court granted Physician's motion for summary judgment on the wrongful life action, ruling South Carolina does not recognize it. Child appeals.

## ISSUE

Does South Carolina recognize a common law cause of action for "wrongful life" brought by or on behalf of a child born with a congenital defect?

## STANDARD OF REVIEW

A trial court may properly grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP; *Tupper v. Dorchester County,* 326 S.C. 318, 487 S.E.2d 187 (1997). In determining whether any triable issues of fact exist, the court must view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the non-moving party. *Manning v. Quinn,* 294 S.C. 383, 365 S.E.2d 24 (1988). On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the appellant, the non-moving party below. *Williams v. Chesterfield Lumber Co.,* 267 S.C. 607, 230 S.E.2d 447 (1976).

■ In a case raising a novel question of law, the appellate court is free to decide the question with no particular deference to the lower court. *I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 411, 526 S.E.2d 716, 719 (2000) (citing S.C. Const. art. V, §§ 5 and 9, S.C.Code Ann. § 14–3–320 and – 330 (1976 & Supp.2003), and S.C.Code Ann. § 14–8–200 (Supp. 2003)); *Osprey, Inc. v. Cabana Ltd. Partnership,* 340 S.C. 367, 372, 532 S.E.2d 269, 272 (2000) (same); *Clark v. Cantrell,* 339 S.C. 369, 378, 529 S.E.2d 528, 533 (2000) (same).

## LAW AND ANALYSIS

Child urges we recognize a wrongful life action because there are times when it is better that a child not be born; such cases can be resolved within existing principles of medical malpractice law as they pertain to an unborn child or infant; damages, including extraordinary expenses related to the defective condition and actual damages for the child's pain, suffering, and emotional distress, are ascertainable; and the action should be recognized in a world where people may prepare "living wills" rejecting medical care in certain circumstances, and capital punishment is allowed under the law.

Physician argues we should reject the action, as most states have done, because courts and juries are incapable of awarding damages, which would require weighing an impaired existence against non-existence; the theory amounts to a repudiation of the value and sanctity of human life; and being born is not a legally cognizable injury.

At the outset, it is important to set forth basic definitions of the terms "wrongful life," "wrongful birth," and "wrongful pregnancy." The terms are used to describe a variety of cases arising under different factual circumstances, and courts have recognized the terms are somewhat misleading and not always used in a consistent manner. *E.g., Hester v. Dwivedi,* 89 Ohio St.3d 575, 733 N.E.2d 1161, 1163 (2000) (recognizing "overreliance on terms such as wrongful life or wrongful birth creates the risk of confusion in applying principles of tort law to actual cases, and may compound or complicate resolution of the case"); *Reed v. Campagnolo,* 332 Md. 226, 630 A.2d 1145, 1150 (1993) (explaining the term "wrongful life" is not instructive, as any wrongfulness is in the negligence of the physician, not the life of the child; any harm is not the birth itself, but the effect of the defendant's alleged negligence resulting in the denial of the parent's right to decide whether to bear a child with a genetic or other defect); *Lininger by Lininger v. Eisenbaum,* 764 P.2d 1202, 1204 n. 2 (Colo.1988) (en banc) ("use of the terms 'wrongful life' and 'wrongful birth' more often serves to obscure the issues than to elucidate them; unfortunately the labels are so entrenched in normal usage that it is difficult to entirely abstain from their use"); *Siemieniec v. Lutheran Gen. Hosp.,* 117 Ill.2d 230, 111 Ill.Dec. 302, 512 N.E.2d 691, 695 (1987) ("Because the courts and the commentators have been less than precise in their utilization of these terms, the legal and theoretical distinctions between the torts often have been blurred. Hence, thoughtful analysis of the validity of wrongful birth and wrongful life as emerging legal concepts requires, in the first instance, a clear understanding of the alleged wrong upon which the cause of action is predicated."). Regardless, the terms have become embedded in the law since the mid–1970s and most courts appear to endorse the following definitions:

A "wrongful life" action is brought by or on behalf of the child himself. The child alleges, because of the defendant's negligence, his parents either decided to conceive him ignorant of the risk of an impairment or birth defect, or were deprived of information during gestation that would have prompted them to terminate the pregnancy. The child alleges, but for the defendant's negligence, he would not have been born. The birth defect or impairment itself occurred natural-

ly, i.e., it was not directly caused by an act or omission of the defendant health care provider.

A "wrongful birth" action is brought by the parent of a child born with an impairment or birth defect. The parent alleges that the negligence of those charged with prenatal testing or genetic counseling deprived them of the right to make a timely decision regarding whether to terminate a pregnancy because of the likelihood their child would be born physically or mentally impaired. The birth defect or impairment itself occurred naturally, i.e., it was not directly caused by an act or omission of the defendant health care provider.

A "wrongful pregnancy" or "wrongful contraception" action is brought by the parent of a healthy but unplanned child, seeking damages from a health care provider who allegedly was negligent in performing a sterilization procedure or abortion, or from a pharmacist or pharmaceutical manufacturer who allegedly was negligent in dispensing or manufacturing a contraceptive prescription or device. *Kush v. Lloyd*, 616 So.2d 415, 417 nn. 2 and 3 (Fla.1992); *Walker by Pizano v. Mart*, 164 Ariz. 37, 790 P.2d 735, 737–38 (1990); *Lininger*, 764 P.2d at 1204; *Bruggeman by Bruggeman v. Schimke*, 239 Kan. 245, 718 P.2d 635, 638 (1986); *Turpin v. Sortini*, 31 Cal.3d 220, 182 Cal.Rptr. 337, 643 P.2d 954, 957 (1982) (en banc); Gregory G. Sarno, *Tort Liability for Wrongfully Causing One to Be Born*, 83 A.L.R.3d 15 (1978); James Bopp, Jr., et al., *The "Rights" and "Wrongs" of Wrongful Birth and Wrongful Life: A Jurisprudential Analysis of Birth Related Torts*, 27 Duq. L.Rev. 461, 464–65 (1989) (explaining why courts should refuse to recognize either action); Mark Strasser, *Wrongful Life, Wrongful Birth, Wrongful Death and the Right to Refuse Treatment: Can Reasonable Jurisdictions Recognize All But One?*, 64 Mo. L.Rev. 29, 30–31 (1999) (explaining why courts should recognize wrongful life actions); Anthony Jackson, *Action for Wrongful Life, Wrongful Pregnancy, and Wrongful Birth in the United States and England*, 17 Loy. L.A. Intl. & Comp. L.Rev. 535 (1995) (analyzing the reasoning of courts rejecting wrongful life action and arguing only the child, not parents, should be allowed to recover damages when disabilities are so severe as to outweigh the benefits of being alive); Thomas K. Foutz, Student

154

Author, *"Wrongful Life": The Right Not to be Born,* 54 Tul. L.Rev. 480 (1980); 62A Am.Jur.2d *Prenatal Injuries; Wrongful Life* §§ 89 to 98 (1990).

█ While wrongful life and wrongful birth actions often arise and are discussed simultaneously, the legitimacy of only the wrongful life action is before us.[1]

## A.  CURRENT SOUTH CAROLINA LAW

█ In a negligence action against a physician or other health care provider in which medical malpractice is alleged, plaintiff generally must demonstrate a duty is owed because a physician-patient relationship existed, physician failed to exercise the degree of care and skill which ordinarily is employed by the profession under similar conditions and like circumstances, physician's failure proximately caused harm or injury to plaintiff, and plaintiff suffered damages as a result of the harm or injury. *See, e.g. Pearson v. Bridges,* 344 S.C. 366, 544 S.E.2d 617 (2001); *Gooding v. St. Francis Xavier Hosp.,* 326 S.C. 248, 487 S.E.2d 596 (1997); *Roberts v. Hunter,* 310 S.C. 364, 426 S.E.2d 797 (1993); *Bramlette v. Charter–Medical–Columbia,* 302 S.C. 68, 393 S.E.2d 914 (1990); *Fields v. Regional Medical Center of Orangeburg,* 354 S.C. 445, 581 S.E.2d 489 (Ct.App.2003); *Daves v. Cleary,* 355 S.C. 216, 584 S.E.2d 423 (Ct.App.2003). Thus, the analysis in a medical malpractice action tracks the familiar duty-breach-causation-damages analysis employed in a typical tort action.

█ It is well established in South Carolina that a viable fetus harmed in utero by the act or omission of another, including a physician or other health care provider, may seek damages from the negligent tortfeasor. *See Rush v. Blanchard,* 310 S.C. 375, 426 S.E.2d 802 (1993) (affirming jury verdict for parents and child in medical malpractice action brought against physician who negligently performed an amniocentesis and harmed infant while he was in the womb, and injured infant was later born alive); *Crosby v. Glasscock Trucking Co.,* 340 S.C. 626, 532 S.E.2d 856 (2000) (nonviable fetus may

---

1.  Mother also brought a "wrongful birth" action on her own behalf in which she seeks damages from Physician in connection with Child's condition. Whether to recognize a cause of action for wrongful birth is not before us, and we express no opinion on it.

not maintain wrongful death action where fetus was stillborn after a vehicle wreck); *West v. McCoy,* 233 S.C. 369, 105 S.E.2d 88 (1958) (same); *Fowler v. Woodward,* 244 S.C. 608, 138 S.E.2d 42 (1964) (unborn child, a viable fetus, is capable of suffering legal wrong and may maintain action for wrongful death where mother and fetus perished in vehicle wreck); *Hall v. Murphy,* 236 S.C. 257, 113 S.E.2d 790 (1960) (unborn child, a viable fetus, may maintain wrongful death action where vehicle wreck resulted in premature birth and infant died four hours later).

■■■ This authority, however, provides minimal guidance in the present case. Wrongful life and wrongful birth actions differ from a typical medical malpractice action because the negligent act or omission of the health care provider did not actually cause the impairment or defective condition. Instead, the impairment or defective condition occurred and the health care provider failed to predict or diagnose it, resulting in the birth of a child with a congenital defect. *See Walker v. Rinck,* 604 N.E.2d 591, 594 (Ind.1992) (distinguishing cases in which the defendant's alleged negligence actually caused an abnormality in a fetus or infant who otherwise would have been born normal from cases alleging wrongful life or wrongful birth actions); *Procanik by Procanik v. Cillo,* 97 N.J. 339, 478 A.2d 755, 760 (1984) (same); *Taylor v. Kurapati,* 236 Mich. App. 315, 600 N.W.2d 670, 674–75 (1999) (same).[2]

In *Phillips v. U.S.,* 508 F.Supp. 537 (D.S.C.1980), the court predicted this Court would not adopt a wrongful life action. The district court rejected the notion, as expressed by other courts, that damages were too difficult to ascertain because of the Hobson's choice between non-existence and an existence with a defective condition. The court also rejected the notion that causation was a problem, noting plaintiff's argument was not that physician caused the defect, but his failure to predict or diagnose it deprived his parents of the opportunity to decide whether to terminate the pregnancy.

---

**2.** This result may be different if medical knowledge were such that a fetus could be treated prior to birth to cure or alleviate Child's congenital defect. Such a case would resemble prenatal injury cases similar to those just described. *See Phillips,* 508 F.Supp. at 543 n. 12 (recognizing this distinction). Child does not claim any such prenatal treatment or cure was available in his case.

The *Phillips* court considered but largely discounted other reasons for rejecting the action, such as an increase in litigation, the perceived difficulty in proving it, that such a decision is better left to the legislature, and that the unfathomable theological or philosophical nature of the issue remove it from the realm of justiciability. Instead, the *Phillips* court rejected a wrongful life action primarily because recognizing it would violate the fundamental public policy of preserving the sanctity and preciousness of human life. *Phillips*, 508 F.Supp. at 542–44.

## B. ARGUMENTS AGAINST A WRONGFUL LIFE ACTION

Twenty-seven states, by judicial opinion, statute, or both, have either refused to recognize or limited a wrongful life action.[3] Three states, discussed below, have allowed such a

---

3. Nineteen states have rejected a wrongful life action by judicial opinion. *Elliott v. Brown*, 361 So.2d 546 (Ala.1978) (serious congenital deformities); *Walker by Pizano v. Mart*, 164 Ariz. 37, 790 P.2d 735 (1990) (rubella syndrome marked by cerebral palsy, deafness, and cardiac abnormalities); *Lininger by Lininger v. Eisenbaum*, 764 P.2d 1202 (Colo.1988) (en banc) (hereditary blindness); *Garrison v. Medical Center of Delaware, Inc.*, 581 A.2d 288 (Del.1989) (Down Syndrome); *Kush v. Lloyd*, 616 So.2d 415 (Fla.1992) (genetic abnormality); *Atlanta Obstetrics & Gynecology Group v. Abelson*, 260 Ga. 711, 398 S.E.2d 557 (1990) (Down Syndrome); *Gale v. Obstetrics & Gynecology of Atlanta, P.C.*, 213 Ga.App. 614, 445 S.E.2d 366 (1994) (Down Syndrome); *Siemieniec v. Lutheran Gen. Hosp.*, 117 Ill.2d 230, 111 Ill.Dec. 302, 512 N.E.2d 691 (1987) (hemophilia); *Bruggeman by Bruggeman v. Schimke*, 239 Kan. 245, 718 P.2d 635 (1986) (multiple congenital abnormalities); *Grubbs ex rel. Grubbs v. Barbourville Family Health Center*, 120 S.W.3d 682 (Ky.2003) (spina bifida and hydrocephalus); *Kassama v. Magat*, 368 Md. 113, 792 A.2d 1102 (2002) (Down Syndrome); *Viccaro v. Milunsky*, 406 Mass. 777, 551 N.E.2d 8 (1990) (severe birth defect relating to skin); *Greco v. U.S.*, 111 Nev. 405, 893 P.2d 345 (1995) (spina bifida, hydrocephalus, paraplegia); *Smith v. Cote*, 128 N.H. 231, 513 A.2d 341 (1986) (rubella syndrome marked by impaired hearing, impaired vision, cardiac abnormalities, and motor retardation); *Becker v. Schwartz*, 46 N.Y.2d 401, 413 N.Y.S.2d 895, 386 N.E.2d 807 (1978) (Down Syndrome); *Azzolino v. Dingfelder*, 315 N.C. 103, 337 S.E.2d 528 (1985) (Down Syndrome); *Hester v. Dwivedi*, 89 Ohio St.3d 575, 733 N.E.2d 1161 (2000) (spina bifida and other defects); *Nelson v. Krusen*, 678 S.W.2d 918 (Tex.1984) (muscular dystrophy); *James G. v. Caserta*, 175 W.Va. 406, 332 S.E.2d 872 (1985) (birth defects); *Dumer v. St. Michael's Hosp.*, 69 Wis.2d 766, 233 N.W.2d 372 (1975) (rubella syndrome marked by retardation and physical abnormalities).

cause of action. Twenty-one jurisdictions, including South Carolina, have not addressed the issue.

Most courts refusing to recognize a wrongful life action have done so primarily for two reasons. First, these courts reason being born is not a legally cognizable injury, regardless of the severity of the defective condition afflicting the infant or child. Such courts believe it is asking too much to expect any court or jury to weigh the fact of being born with a defective condition against the fact of not being born at all, i.e., non-existence. Therefore, it is legally and logically impossible to

Three states have rejected a wrongful life action by judicial opinion as well as limited statutes which prohibit such actions to the extent the issue of abortion is implicated. *Blake v. Cruz*, 108 Idaho 253, 698 P.2d 315 (1984) (rubella syndrome marked by defects in hearing, vision, heart malfunctions, and decreased motor skills); Idaho Code § 5–334 (statute enacted in 1985 prohibits lawsuits in which claim is that, but for act or omission of another, a person would have been aborted); *Cowe by Cowe v. Forum Group, Inc.*, 575 N.E.2d 630 (Ind.1991) (healthy baby born as result of rape to profoundly retarded mother who was unable to care for him); Ind.Code Ann. § 34–12–1–1 (under statute enacted in 1987, person may not maintain cause of action or receive an award of damages on the persons behalf based on the claim that but for the negligent conduct of another, the person would have been aborted); *Wilson v. Kuenzi*, 751 S.W.2d 741 (Mo.1988) (Down Syndrome); Mo. Rev.Stat. Ann. § 188.130 (statute enacted in 1986 prohibits wrongful birth or wrongful life actions which claim that, but for negligence, person would have been aborted).

Pennsylvania has rejected wrongful life actions by judicial opinion and by a statute generally barring such actions. *Ellis v. Sherman*, 512 Pa. 14, 515 A.2d 1327 (1986) (severe congenital defects) 42 Pa. Consol. Stat. Ann. § 8305 (statute enacted in 1988 generally prohibits wrongful life and wrongful birth actions). Michigan has prohibited wrongful life actions by statute. Mich. Comp. Laws Ann. § 600.2971 (statute enacted in 2001 generally prohibits wrongful life and wrongful birth actions).

Minnesota, North Dakota, and Utah have prohibited wrongful life actions by statute, at least to the extent the issue of abortion is implicated. Minn.Stat. § 145.424 (statute enacted in 1982 prohibits wrongful birth or wrongful life actions which claim that, but for negligence, person would have been aborted); N.D. Cent.Code § 32–03–43 (statute enacted in 1985 prohibits wrongful life action in which person claims on own behalf that, but for act or omission of another, person would have been aborted); Utah Code Ann. § 78–11–24 (statute enacted in 1983 prohibits actions in which it is claimed on behalf of a person that, but for act or omission of another, person would have been aborted). *But see Molloy v. Meier*, 679 N.W.2d 711 (Minn.2004) (illustrating that a wrongful pregnancy action brought by parent who alleges, not that she would have had abortion, but that she would not have conceived child, remains viable despite statute).

calculate damages allegedly suffered by the child. *E.g., El-liott v. Brown*, 361 So.2d 546, 548 (Ala.1978); *Walker by Pizano v. Mart*, 164 Ariz. 37, 790 P.2d 735, 740 (1990); *Lininger by Lininger v. Eisenbaum*, 764 P.2d 1202, 1209–10 (Colo.1988) (en banc); *Garrison v. Medical Center of Delaware, Inc.*, 581 A.2d 288, 293–94 (Del.1989); *Kush v. Lloyd*, 616 So.2d 415, 423 (Fla.1992); *Siemieniec v. Lutheran Gen. Hosp.*, 117 Ill.2d 230, 111 Ill.Dec. 302, 512 N.E.2d 691, 697–700 (1987); *Cowe by Cowe v. Forum Group, Inc.*, 575 N.E.2d 630, 634–35 (Ind.1991); *Bruggeman by Bruggeman v. Schimke*, 239 Kan. 245, 718 P.2d 635, 639–42 (1986); *Grubbs ex rel. Grubbs v. Barbourville Family Health Center*, 120 S.W.3d 682, 689 (Ky.2003); *Kassama v. Magat*, 368 Md. 113, 792 A.2d 1102, 1114–24 (2002); *Wilson v. Kuenzi*, 751 S.W.2d 741, 742 (Mo.1988); *Greco v. U.S.*, 111 Nev. 405, 893 P.2d 345, 347–48 (1995); *Smith v. Cote*, 128 N.H. 231, 513 A.2d 341, 352–55 (1986); *Azzolino v. Dingfelder*, 315 N.C. 103, 337 S.E.2d 528, 532–33 (1985); *Nelson v. Krusen*, 678 S.W.2d 918, 924–25 (Tex.1984).

The reasoning of these courts often is expressed along the following lines:

> This judicial reticence [to recognize a wrongful life action] stems partially from the fact that the theory amounts to a repudiation of the value of human life. The contention of wrongful life plaintiffs is not that they should not have been born without defects, but rather, that they should not have been born at all. The essence of such claims is that the childs very life is "wrongful."

> We ... decline to adopt the doctrine which would recognize such a cause of action. Basic to our culture is the precept that life is precious. As a society therefore, our laws have as their driving force the purpose of protecting, preserving and improving the quality of human existence. To recognize wrongful life as a tort would do violence to that purpose and is completely contradictory to the belief that life is precious. The fact that Dessie Blake will live in a severely disabled condition is unquestionably a tragedy; nevertheless, we agree with the New Jersey Supreme Court in that life—whether experienced with or without a major physical handicap—is more precious than non-life. Thus,

because Dessie Blake has suffered no legally cognizable wrong by being born, she has no cause of action.

Even if we were to hold that wrongful life were a legally cognizable injury in Idaho, the impossibility of measuring damages would in any event preclude recognition of the cause of action.... The primary purpose of tort law is that of compensating plaintiffs for the injuries they have suffered wrongfully at the hands of others. As such, damages are ordinarily computed by comparing the condition plaintiff would have been in, had the defendants not been negligent, with plaintiffs impaired condition as a result of the negligence. In the case of a claim predicated upon wrongful life, such a computation would require the trier of fact to measure the difference in value between life in an impaired condition and the utter void of nonexistence. Such an endeavor, however, is literally impossible. As Chief Justice Weintraub noted, man, who knows nothing of death or nothingness, simply cannot affix a price tag to non-life.

*Blake v. Cruz*, 108 Idaho 253, 698 P.2d 315, 321–22 (1984) (citations and quotes omitted).

Whether it is better never to have been born at all than to have been born with even gross deficiencies is a mystery more properly to be left to the philosophers and the theologians. Surely the law can assert no competence to resolve the issue, particularly in view of the very nearly uniform high value which the law and mankind has placed on human life, rather than its absence. Not only is there to be found no predicate at common law or in statutory enactment for judicial recognition of the birth of a defective child as an injury to the child; the implications of any such proposition are staggering. Would claims be honored, assuming the breach of an identifiable duty, for less than a perfect birth? And by what standard or by whom would perfection be defined?

*Becker v. Schwartz*, 46 N.Y.2d 401, 413 N.Y.S.2d 895, 386 N.E.2d 807, 812 (1978).

The second reason some courts reject a wrongful life action is that the physician did not actually cause the congenital impairment or defect, which would make it improper under established tort principles to hold the physician liable for

alleged damages. *E.g. Walker,* 790 P.2d at 740; *Lininger,* 764 P.2d at 1212; *Garrison,* 581 A.2d at 293; *Azzolino,* 337 S.E.2d at 536.

Some courts rejecting both wrongful life and wrongful birth actions have concluded the decision on whether to adopt such a cause of action is better left to the legislature. *E.g. Atlanta Obstetrics & Gynecology Group v. Abelson,* 260 Ga. 711, 398 S.E.2d 557, 560 (1990); *Gale v. Obstetrics & Gynecology of Atlanta, P.C.,* 213 Ga.App. 614, 445 S.E.2d 366 (1994); *Siemieniec,* 111 Ill.Dec. 302, 512 N.E.2d at 702; *Cowe,* 575 N.E.2d at 635; *Azzolino,* 337 S.E.2d at 537.

## C. ARGUMENTS IN FAVOR OF A WRONGFUL LIFE ACTION

Three states—California, New Jersey, and Washington—have recognized a wrongful life action by judicial opinion.[4]

In *Turpin v. Sortini,* 31 Cal.3d 220, 182 Cal.Rptr. 337, 643 P.2d 954 (1982), the child plaintiff alleged physician was negligent in failing to diagnose a hereditary ailment that had afflicted her older sister, depriving her of the "fundamental right of a child to be born as a whole, functional human being without total deafness." *Id.* at 960. The California Supreme Court questioned the validity of a key rationale used by many other courts to reject a wrongful life action.

> Although it is easy to understand and to endorse these decisions desire to affirm the worth and sanctity of less-than-perfect life, we question whether these considerations alone provide a sound basis for rejecting the childs tort action. To begin with, it is hard to see how an award of damages to a severely handicapped or suffering child would "disavow" the value of life or in any way suggest that the child is not entitled to the full measure of legal and nonlegal rights and privileges accorded to all members of society.

---

4. Maine, which allows a wrongful birth action by judicial opinion, arguably has authorized both wrongful life and wrongful birth actions by statute. *See* 24 Me.Rev.Stat. Ann. § 2931 (limiting damages for birth of healthy, unplanned child to wrongful pregnancy cases and establishing recoverable damages for birth of unhealthy child born as a result of professional negligence); *Thibeault v. Larson,* 666 A.2d 112 (Me.1995).

Moreover, while our society and our legal system unquestionably place the highest value on all human life, we do not think that it is accurate to suggest that this states public policy establishes—as a matter of law—that under all circumstances "impaired life" is "preferable" to "nonlife." . . .

In this case, in which the plaintiffs only affliction is deafness, it seems quite unlikely that a jury would ever conclude that life with such a condition is worse than not being born at all. Other wrongful life cases, however, have involved children with much more serious, debilitating and painful conditions, and the academic literature refers to still other, extremely severe hereditary diseases. Considering the short life span of many of these children and their frequently very limited ability to perceive or enjoy the benefits of life, we cannot assert with confidence that in every situation there would be a societal consensus that life is preferable to never having been born at all.

*Id.* at 961–63.

The *Turpin* court held the child plaintiff could not recover general damages, in part endorsing the reasoning of courts which have concluded it is impossible to award damages because what the "plaintiff has 'lost' is not life without pain and suffering, but rather the unknowable status of never having been born." *Id.* at 964. However, the court further held the child plaintiff could recover extraordinary expenses necessary to treat the defective condition. *Id.* at 965. *See also Harbeson v. Parke–Davis, Inc.,* 98 Wash.2d 460, 656 P.2d 483, 494–97 (1983) (en banc) (agreeing with *Turpin* and holding child may maintain a wrongful life action to recover extraordinary expenses to be incurred during child's lifetime as result of child's congenital defect); *Procanik by Procanik v. Cillo,* 97 N.J. 339, 478 A.2d 755 (1984) (child may maintain wrongful life action to recover extraordinary medical expenses related to his defective condition, where parents were unable to bring a wrongful birth action, which previously had been recognized in that state, because their claim was barred by the statute of limitations).

## D. THE PRESENT CASE

We agree with Physician a wrongful life action does not present an ordinary tort case and it is difficult, if not impossi-

ble, to apply a traditional duty-breach-causation-damages analysis to it. We acknowledge, as many courts have done, the formidable theological and philosophical issues surrounding such an action.

We assume, for the sake of argument, Physician owed a duty to Child in utero and breached his duty, proximately causing Child to be born with a severe congenital defect. A purported lack of causation is not fatal to the case because Child is not asserting physician caused the defect, but rather Physician's failure to predict or diagnose defect deprived mother of the opportunity to decide whether to legally terminate the pregnancy. *See Phillips,* 508 F.Supp. at 542.

We embrace the reasoning espoused by a majority of courts rejecting a wrongful life cause of action, and conclude that being born with a naturally occurring defect or impairment does not constitute a legally cognizable injury in such an action.

We recognize the extremely severe nature of Child's impairment. It is difficult even to begin to describe the nature of Child's loss within the dry confines of a judicial opinion. Nevertheless, we find untenable Child's argument that a child who already has been born should have the chance to prove it would have been better if he had never have been born at all.

In deciding whether to render a verdict in Child's favor or what damages, if any, to award in a case brought by Child, a jury necessarily would face an imponderable question: Is a severely impaired life so much worse than no life at all that Child is entitled to damages? The minority of courts allowing a wrongful life action have not focused on this question. Our civil justice system places inestimable faith in the ability of jurors to reach a fair and just result under the law, but even a jury collectively imbued with the wisdom of Solomon would be unable to weigh the fact of being born with a defective condition against the fact of not being born at all, i.e., nonexistence. It is simply beyond the human experience. Perhaps, as the court mused in *Phillips,* "scientific and technological advances, together with the changes in moral attitudes that often accompany such advances, may eventually provide a new perspective from which to analyze this position." *Phillips,* 508 F.Supp. at 543. Nevertheless, we find it persuasive

in the instant case and we decline to recognize a cause of action for wrongful life brought by or on behalf of a child born with a congenital defect.

## CONCLUSION

We decline to recognize a common law cause of action for wrongful life brought by or on behalf of a child with a congenital defect.

**AFFIRMED.**

MOORE, A.C.J., WALLER, J., and Acting Justice EDWARD B. COTTINGHAM, concur. PLEICONES, J., concurring in result only.