[Cite as *Payne v. Rumpke*, 2023-Ohio-4760.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

TRINA J. PAYNE, AS THE :
FIDUCIARY OF THE : Case No. 22CA26
ESTATE OF GARY BRENT :
PAYNE (DECEASED), :
 :
 : DECISION AND JUDGMENT
Plaintiff-Appellant, : ENTRY
 :
v. :
 :
 : **RELEASED 12/26/2023**
RUMPKE TRANSPORTATION :
COMPANY, LLC, ET AL., :
 :
Defendants-Appellees. :

APPEARANCES:

Mark D. Tolles, II, Benson & Sessor, LLC, Chillicothe, Ohio, for Appellant.

Louis F. Gilligan, Michael T. Cappel, Sarah V. Geiger, Keating Muething & Klekamp PLL, Cincinnati, Ohio, for Appellees.

Smith, P.J.

{¶1} Trina J. Payne, "Appellant," as Fiduciary of the Estate of Gary Brent Payne, appeals the June 24, 2022 Order Granting Defendants' Motion for Summary Judgment and Order of Dismissal of the Ross County Court of Common Pleas. Defendants, collectively now "Appellees," are Rumpke Transportation Company, LLC, Rumpke Consolidated Companies, Inc., DBA Rumpke, Rumpke Waste, Inc., Rumpke of Ohio, Inc., Matthew Reed, and John Does 1-10 (names

and addresses unknown).[1]  Appellant asserts two assignments of error challenging: (1) the trial court's decision implicitly overruling her motion to strike the supplemental affidavit of Neil Gilreath; and (2) the trial court's decision granting summary judgment to the Defendants.  Based upon our de novo review of the record, we find that no genuine issues of material fact exist and that the Appellees are entitled to judgment as a matter of law.  Accordingly, we overrule both assignments of error and affirm the judgment of the trial court.

FACTUAL AND PROCEDURAL BACKGROUND

{¶2}   Gary Brent Payne was in a collision with a Rumpke garbage truck operated by Matthew Reed (hereinafter "Reed") on July 27, 2018.  Both drivers were operating their motor vehicles in a northeasterly direction on County Road 166/Mt. Tabor Road in Huntington Township at approximately 7:20 a.m. when the impact occurred.  Reed later testified that he had stopped the truck in the roadway in front of 5588 Mt. Tabor Road while his co-worker, Henry Clay, gathered trash cans from that residence.  The front of Mr. Payne's vehicle collided with the rear of the Rumpke truck.  The bright morning sun was thought to be a factor in the collision.

---

[1]  For brevity throughout the opinion, we will refer to Trina J. Payne as the "Appellant," being mindful that this action was brought in her capacity as fiduciary of her husband's estate.

{¶3}  Mr. Payne's vehicle sustained heavy front-end damage and he sustained severe physical injuries.  Trooper Quinn Dunn of the Ohio State Highway Patrol (OSHP) responded to the accident scene at 7:35 a.m. and later described Mr. Payne's injuries as "pretty bad."  Mr. Payne died shortly after being transported to a local hospital by EMS.

{¶4}  In 2019, Appellant, having been named fiduciary of her spouse's estate by the Ross County Probate Court, filed a complaint in that capacity against Appellees.[2]  Appellant asserted claims against Appellees sounding in negligence, respondeat superior/vicarious liability, negligence per se, negligent entrustment, and wrongful death.  Appellant requested compensation for pain and anguish, medical expenses, funeral expenses, and future lost earnings.

{¶5}  Appellees filed a joint answer to the allegations of the complaint. Rumpke admitted that Reed was its employee and was acting within the scope of his employment with Rumpke.  Rumpke denied all allegations of negligence, denied all claims for damages, raised several affirmative defenses, and requested that the complaint be dismissed.  Thereafter, the parties engaged in discovery and motion practice.  The complaint was later voluntarily dismissed by Appellant and refiled in July of 2021.

---

[2] When necessary to avoid awkwardness, we will also refer to these parties individually as "Rumpke" or "Reed."

{¶6} Matthew Reed was deposed and fielded many questions regarding his personal driving experience and his driving experience working for Rumpke. He acquired a Commercial Driver's License (CDL) in 2001 and began working as a utility driver for Rumpke. Reed admitted he was terminated by Rumpke in 2004 due to his inability to abide by Rumpke's rules regarding tardiness. Reed re-applied to work for Rumpke and was re-hired as a driver in 2005. When Reed was asked about the training he received upon his return to employment, he testified "Just driver training. Just made sure I could still drive." Reed testified he also had to review Rumpke's policies in a classroom setting and then take a road test.[3]

{¶7} Reed testified he wears glasses because he cannot see "long distances." He could not recall if he was wearing them on the accident date. Reed also admitted he had been involved in some minor vehicle accidents and had incurred various traffic violations, both over his years driving for Rumpke and on his own personal time. He had received a speeding ticket in Pike County on July 24, 2018.

{¶8} On July 27, 2018, Reed was operating a rear-load garbage truck, designated as Number 80498. As a driver, he was responsible for conducting pre-trip and post-trip inspections on his truck for the purpose of making sure the truck

---

[3] Rumpke attached the Affidavit of Michael Puckett, Director of Safety for Rumpke Consolidated Companies, Inc., who attested to Matthew Reed's participation and successful completion of new-hire training requirements, attendance at monthly safety meetings and daily morning "huddles" to discuss safety. Puckett also attested to Reed's nearly 20 years of experience driving for Rumpke and to Reed's history of positive performance reviews.

met Department of Transportation (DOT) safety standards.  He also controlled the lights.  Reed acknowledged that in a post-trip inspection report he prepared on July 13, 2018, the strobe light and taillight on the driver's side of the vehicle were not operational.  However,  Reed testified on the accident date that all of his truck's lights were in working order.  Reed described the collision with Mr. Payne as follows:

> I was collecting trash and going down Mt. Tabor doing my job, being safe, and I pulled up to 5588 Mt. Tabor Road.  Henry Clay, the guy that was with me, jumped out.  Didn't jump out, he climbed out.  He walked back, grabbed the waste holder, put it on the toter tipper.  He lifted it with the tipper.  As soon as he lifted it, I seen [sic] him run away.  As soon as I seen [sic] him run away, I looked in my driver's mirror and that's when I got hit.

{¶9}  Reed also testified at the time of the impact, his vehicle was at a full and complete stop at 5588 Mt. Tabor Road with the parking brake activated.  On re-cross, Reed testified as follows:

> The brake lights would only been on [sic] if I applied them.  But when I pull the parking brake and let off the brake, no they are not on.  My taillights are, my strobe lights are flashing, my marker lights are on.

{¶10} Upon responding to the accident, Trooper Dunn conducted an investigation on behalf of the OSHP.  Trooper Dunn testified that due to the severity of Mr. Payne's injuries, he did not have an opportunity to ask Payne for his opinion or perspective on how the crash occurred.  Trooper Dunn

testified there was no way to determine what was going on inside Mr. Payne's vehicle prior to and during the collision. Trooper Dunn also testified regarding the OSHP crash report he prepared.

{¶11} In the "Contributing Circumstance" section of the OSHP crash report, Trooper Dunn marked Mr. Payne as having contributed to the accident by following too closely, i.e., failing to maintain an assured clear distance.[4] Trooper Dunn testified his investigation yielded no evidence that Mr. Payne applied the brakes or took any evasive action prior to the impact with the Rumpke truck. The trooper did not find skid marks or shadowing on the pavement. According to the trooper's testimony, several people made it a point to stop and tell him that the "sun's really bad in that area at that time." Trooper Dunn testified that despite the possible sun glare issue, he still found Mr. Payne to be at fault for the accident.

{¶12} Conversely, Trooper Dunn did not find Matthew Reed as having fault in the accident. He found that all lights on the Rumpke truck were working at the scene, except the ones damaged in the accident. Neither Reed nor Rumpke were issued any traffic citations arising from the accident. Trooper Dunn testified he had no suspicion that Mr. Reed was intoxicated or otherwise impaired at the time of the accident.

---

[4] "Police reports are generally inadmissible hearsay." *Martin v. Wandling,* 2016-Ohio-3032, 65 N.E.3d 103 at ¶70 (4th Dist.) (Internal citations omitted). In this matter both parties have referenced the OSHP crash report prepared by Trooper Dunn and the OSHP crash scene photos. Neither party has interposed objections or assigned error in this regard.

{¶13}  On January 20, 2022, Appellees filed a joint motion for summary judgment supported by several affidavits, including one from an expert, Nick Gilreath, dated February 20, 2020.  Mr. Gilreath averred that he was the chief investigator for Focus Investigations, LLC, a professional traffic crash reconstruction firm.  He testified as to his experience in law enforcement and in civil accident investigations and training, and he attached a copy of his Curriculum Vitae.   Mr. Gilreath also attached a copy of his expert report in which he relied upon the OSHP crash report, witness statements, OSHP photographs, EDR (Event Data Recorder).  He also independently reviewed the accident site.

{¶14}  Gilreath noted  in his report that the EDR information obtained from Mr. Payne's Chevrolet Impala indicated that Mr. Payne "entered the impact at a constant speed of 50 mph or 733 feet per second."  Gilreath also noted in his report that "the EDR shows that the brake lamp switch was never activated before impact, which is supported by the lack of physical roadway evidence in the form of skid marks from the Chevrolet at any point along the paved asphalt surface leading up to the impact."  Gilreath's complete opinions in the affidavit are set forth below.

{¶15}  Appellant filed a brief in opposition to the motion for summary judgment.  Appellant argued that her husband may have been negligent but framed the issue as " whether or not some negligence on the part of Rumpke or its employees contributed in any way to the accident."  Appellant conceded that prior

to the collision, the Payne vehicle was operated at a steady speed of 50 miles per hour. Appellant also conceded that the Rumpke garbage truck was stopped approximately 16.0 to 16.75 seconds before the collision.

{¶16} Citing Rumpke's own expert Nick Gilreath's report, the OSHP photographs, and the reconstruction videos, Appellant asserted specific and contradictory arguments from the highly technical information contained in Gilreath's accident reconstruction report. However, Appellant failed to support the memorandum contra with an affidavit containing the contradictory alternative opinions from her own expert. Appellant argued that Appellees' alleged violations of various Ohio motor vehicle safety statutes caused Mr. Payne to be unable to see and discern the stopped garbage truck and further caused Mr. Payne to be unable to avoid the collision.

{¶17} Appellees Rumpke and Reed also filed a reply in support of the motion for summary judgment. In the reply, Appellees argued that Appellant misinterpreted the accident reconstruction report prepared by Nick Gilreath. Rumpke later filed a supplemental affidavit from Gilreath dated March 4, 2020, in support of its reply. In the supplemental affidavit, Gilreath added language in paragraph seven indicating that all strobe warning lights were functional on the truck prior to the collision.[5] Mr. Gilreath also defined terms such as "perception

---

[5] This fact was also contained in Matthew Reed's deposition testimony.

reaction time," "perception reaction distance," and "braking friction." He also discussed scenarios assuming different perception reaction times of 2.0 seconds and 1.5 seconds. Mr. Gilreath opined at Paragraph 14:

> Regardless of whether Mr. Payne's reaction time was 1.5 seconds or 2.0 seconds, if he slammed on his brakes, all he needed to avoid the accident was 4.75-5.25 seconds and 229-267 feet in total. In reality, even accounting for potential sun glare, Mr. Payne had at least 10 seconds of time and 733 feet of distance to avoid this accident. Mr. Payne had plenty of time to perceive, react, and avoid this accident.

On June 22, 2022, Appellant filed a motion to strike the supplemental affidavit.

{¶18} On June 24, 2022, the trial court granted Appellees Rumpke's and Reed's joint motion for summary judgment and dismissed the action with prejudice. This timely appeal followed. Where pertinent, additional facts are set forth below.

## ASSIGNMENTS OF ERROR

I.    THE TRIAL COURT ABUSED ITS DISCRETION IN OVERRULING TRINA PAYNE'S JUNE 22, 2022 MOTION TO STRIKE AFFIDAVIT OF NEIL GILREATH FILED ON MARCH 15, 2022.

II.   THE TRIAL COURT ERRED IN GRANTING THE RUMPKE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN ITS JUNE 24, 2022 ORDERS.

{¶19} Because Appellant's assignments of error are interrelated, we

will consider them jointly.  Without explaining the legal analysis the trial

court engaged in, the court's decision summarily dismissed all claims set

forth in Appellant's complaint against Rumpke and Matthew Reed.[6]  We

will begin by setting forth the legal principles which will guide our review

herein.

APPLICABLE STANDARDS OF REVIEW AND LEGAL THEORIES

A. SUMMARY JUDGMENT STANDARD OF REVIEW

{¶20} Appellate review of summary judgment decisions is de novo,

governed by the standards of Civ.R. 56.  *Vacha v. N. Ridgeville,* 136 Ohio

St.3d 199, 2013-Ohio-3020, 992 N.E.2d 1126, ¶ 19; *Citibank v. Hine,* 4th

Dist. Ross No. 17CA3624, 2019-Ohio-464, ¶ 27.  Summary judgment is

appropriate if the party moving for summary judgment establishes that (1)

there is no genuine issue of material fact, (2) reasonable minds can come to

but one conclusion, which is adverse to the party against whom the motion is

made, and (3) the moving party is entitled to judgment as a matter of law.

*Capital One Bank (USA) N.A. v. Rose,* 4th Dist. Ross No. 18CA3628, 2018-

Ohio-2209, ¶ 23; Civ.R. 56; *New Destiny Treatment Ctr., Inc. v. Wheeler,*

129 Ohio St.3d 39, 2011-Ohio-2266, 950 N.E.2d 157, ¶ 24.

---

[6] A trial court need not discuss the evidence and law in its summary judgment ruling. *See Chester/12LTD v. Epiq Construction Services, Inc.*, 8th Dist. Cuyahoga Nos. 11626 and 112198, 2023-Ohio-1886, at ¶ 26.

{¶21} The moving party has the initial burden of informing the trial court of the basis for the motion by pointing to summary judgment evidence and identifying parts of the record that demonstrate the absence of a genuine issue of material fact on the pertinent claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). Once the moving party meets this initial burden, the non-moving party has the reciprocal burden under Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue remaining for trial. *Dresher,* 75 Ohio St.3d at 293, 662 N.E.2d 264. *See also Rose, supra,* at ¶ 24. Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. *Ball v. MPW Indus. Servs., Inc.,* 2016-Ohio-5744, 60 N.E.3d 1279, at ¶ 29 (5th Dist.), citing *Vahila v. Hall,* 77 Ohio St.3d 421, 429, 674 N.E.2d 1164 (1997), citing *Dresher, supra.* As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. *Hollingshead v. Utility Solutions of Ohio, Inc.,* 5th Dist. Licking No. 2020CA0081, 2021-Ohio-3151, at ¶37, citing *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 506 N.E.2d 212 (1987).[7]

---

[7]According to the Ross County Court of Common Pleas docket sheet in this matter, the exhibits, which included depositions, were on a USB drive filed January 26, 2022. According to the Rules of Court of the Ross County Court of Common Pleas General Division, Rule 3.04, no depositions shall be submitted for electronic filing. Rumpke attached portions of the depositions of Matthew Reed and Quinton Dunn to its motion for summary judgment. Appellant attached portions of the depositions of Matthew Reed and Michael Puckett to the memorandum contra.

## B. NEGLIGENCE

{¶22} Appellant seeks reversal of the trial court's judgment implicitly finding that Matthew Reed was not negligent. " ' "It is fundamental that in order to establish a cause of action for negligence, the plaintiff must show (1) the existence of a duty, (2) a breach of duty, and (3) an injury proximately resulting therefrom." ' " *Cordell v. White,* 2018-Ohio-1909, 113 N.E.3d 1, ¶ 9 (4th Dist.), quoting *Armstrong v. Best Buy Co.,* 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 8, quoting *Menifee v. Ohio Welding Prod., Inc.,* 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984). "Liability in negligence is dependent upon the existence of a proximate cause relationship between breach of duty and injury suffered." *Hester v. Dwivedi,* 89 Ohio St.3d 575, 583, 733 N.E.2d 1161 (2000). "Causation requires a factual nexus between the breach and injury (i.e., actual cause) and a significant degree of connectedness that justifies imposing liability (i.e., proximate cause)." *Schirmer v. Mt. Auburn Obstetrics & Gynecologic Assoc.,*

---

If an opposing party fails to object to improperly introduced evidentiary materials, the trial court may, in its discretion, consider those materials in ruling on the summary judgment motion. *See Prof. Bank. Servc. V. Grossman DT, Inc.,* 8th Dist. Cuyahoga No. 107670, 2019-Ohio-2230, at ¶ 11. And, the failure of a party to move to strike or otherwise object to documentary evidence submitted by an opposing party in support of or in opposition to a motion for summary judgment waives any error in considering such evidence under Civ.R. 56(C). *Id.* at ¶ 12. *See also Burkitt v. Shepherd,* 4th Dist. Pike No. 05CA744, 2006-Ohio-3673, fn 5.

The Joint Rule 26 report of the parties, listed at Number 14 on the court docket, does not shed light on whether the trial court allowed the parties herein to circumvent the usual local rules. Given the absence of any mention or sanction by the trial court for filing the depositions via electronic filing and in the absence of the parties' objections to the utilization of portions of the depositions, we have no choice but to presume the regularity of the record. *See Knapp v. Edwards Laboratories,* 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980.)

*Inc.,* 108 Ohio St.3d 494, 2006-Ohio-942, 844 N.E.2d 1160, ¶ 40, citing *Hester, supra,* at 583. "The law of negligence does not hold a defendant liable for damages that the defendant did not cause." *Hester,* 89 Ohio St.3d at 583, 733 N.E.2d 1161. Consequently, a proximate relation between a plaintiff's injury and a defendant's negligence is an essential component of a negligence action. *See id.*

{¶23} " Ordinary care is that degree of care which persons of ordinary care and prudence are accustomed to observe under the same or similar circumstances, and the degree of care required of a motorist is always controlled by and depends upon the * * * 'place, circumstances, conditions, and surroundings.' " *Joyce v. Rough,* 6th Dist. Lucas No. L-10-1368, 2011-Ohio-3713, at ¶ 16, quoting *Foulke v. Beogher*, 166 Ohio App.3d 435, 2006-Ohio-1411, 850 N.E.2d 1269, ¶ 9 (3rd Dist.) (Citations omitted.) *Accord Mussivand v. David,* 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989). Negligence is never presumed, it must be proven. *Cordell v. White, supra*, at ¶ 32; *Biery v. Pennsylvania RR. Co.,* 156 Ohio St. 75, 99 N.E.2d 895 (1951), paragraph two of the syllabus. "In an action based on negligence, the presumption exists that each party was in the exercise of ordinary care and such presumption prevails until rebutted by evidence to the contrary." *Id.*; *Snider v. Nieberding,* 12th Dist. Clermont No. CA2002-12-105, 2003-Ohio-5715, ¶ 12.

{¶24} Furthermore, it is not enough for a plaintiff to speculate that a defendant's action or failure to act might have caused an injury. *Garrett Well LLC*

*v. Frick-Gallagher Manufacturing Company,* 2021-Ohio-160, 166 N.E.3d 556, ¶ 43. *See also Clough v. Watkins,* 4th Dist. Washington No. 19CA20, 2020-Ohio-3446, at ¶ 31 (Court discussed the causation element of a negligence claim and cited *Gedra v. Dallmer Co.,* 153 Ohio St. 258, 91 N.E.2d 256 (1950), paragraph two of the syllabus). *See also Bowersock v. Addlesburger*, 4th Dist. Washington No. 19CA13, 2019-Ohio-5447, at ¶ 39 (Speculation is not sufficient to create a genuine issue of material fact so as to defeat a properly supported summary judgment motion).

## C. NEGLIGENCE PER SE

{¶25} Appellant raises six specific allegations of negligence per se as a result of Reed's and/or Rumpke's alleged violations of Ohio's motor vehicle safety statutes. " 'In Ohio, it is a well settled principle of law that violation of a specific safety statute, absent a showing of some legal excuse for failure to comply with the conduct required by the statute, constitutes negligence per se.' " *Sickles v. Jackson Cty. Hwy. Dept.*, 196 Ohio App.3d 703, 2011-Ohio-6102, 965 N.E.2d 330, at ¶23 (4th Dist.), quoting *Zehe v. Falkner*, 26 Ohio St.2d 258, 261-262, 271 N.E.2d 276 (1971). "The concept of negligence per se allows the plaintiff to prove the first two prongs of the negligence test, duty and breach of duty, by merely showing that the defendant committed or omitted a specific act prohibited or required by statute;

no other facts are relevant." *Lang v. Holly Hill Motel, Inc.,* 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120, ¶ 15.

{¶26} " ' " Negligence per se does not equal liability per se. Simply because the law may presume negligence from a person's violation of a statute * * * does not mean that the law presumes that such negligence was the proximate cause of the harm inflicted." ' " *Westfall v. Lemon*, 4th Dist. Washington No. 14CA12, 2015-Ohio-384, ¶ 23, quoting *Barnett v. Combs,* 4th Dist. Ross No. 1268, 1986 WL 15209, *3 (Dec. 29, 1986), quoting *Merchants Mutual Ins. Co. v. Baker*, 15 Ohio St.3d 316, 473 N.E.2d 827 (1984).

## D.  RESPONDEAT SUPERIOR/VICARIOUS LIABILITY

{¶27}  In the re-filed complaint, Appellant also alleges that Rumpke was liable for the negligent conduct of its employee Matthew Reed pursuant to the theories of respondeat superior/vicarious liability.  Appellant asserts that Mr. Reed did not receive additional driver-related training after Rumpke re-hired him in 2005, that Reed had been involved in numerous collisions involving Rumpke vehicles and personal vehicles, and that there was evidence of numerous problems with the Rumpke truck's exterior lights prior to the July 27, 2018 accident.  In *Kingston Mound Manor I v. Keeton,* 4th Dist. Pickaway No. 18CA15, 2019-Ohio-3260, at ¶ 22, this court explained:

The doctrine of respondeat superior is expressed in the Restatement of the Law 2d, Agency (1958) 481, Section 219(1), which states as follows: "A master is subject to liability for the torts of his servants committed while acting in the scope of their employment." Ohio law provides, "[i]t is well-established that in order for an employer to be liable under the doctrine of respondeat superior, the tort of the employee must be committed within the scope of employment."

{¶28} Additionally, it is "axiomatic that for the doctrine of respondeat superior to apply, an employee must be liable for a tort committed in the scope of his employment." *Kingston, supra,* at ¶ 23; *Byrd v. Faber,* 57 Ohio St.3d 56, 57, 565 N.E.2d 584 (1991), citing *Strock v. Pressnell,* 38 Ohio St.3d 207, 217, 527 N.E.2d 1235 (1988). "[I]f an employee has no liability, the employer cannot be liable under the theory of respondeat superior because any liability of the employer is derivative of the employee's liability." *Walk v. Ohio Supreme Court,* 10th Dist. Franklin No. 03AP-205, 2003-Ohio-5343, ¶ 6, citing *Pretty v. Mueller,* 132 Ohio App.3d 717, 723, 726 N.E.2d 503 (1st Dist.1997).

## E. NEGLIGENT ENTRUSTMENT

{¶29} Based on Matthew Reed's prior driving history as alluded to above, Appellant alleged Rumpke negligently entrusted its vehicle to employee Reed. The rule regarding liability for negligent entrustment is stated as follows:

"The owner of a motor vehicle may be held liable for an injury to a third person upon the ground of negligence if the owner knowingly, either through actual knowledge or through knowledge implied from known facts and circumstances,

entrusts its operation to an inexperienced or incompetent operator whose negligent operation results in the injury."

*Marcum v. White,* 4th Dist. Lawrence No. 1928, 1990 WL 127033, *3, quoting

*Gulla v. Straus,* 154 Ohio St.193, 93 N.E.2d 662, (1950), paragraph three of the syllabus.

## F.  WRONGFUL DEATH

{¶30}  Appellant also asserted a claim for wrongful death.  Ohio's wrongful-death statute is evoked when the death of a person is "caused by wrongful act, neglect, or default which would have entitled the party injured to maintain an action and recover damages if death had not ensued * * * ."  Ohio R.C. 2125.01. *See Sikon v. Carroll County,* Case No. 5:20-CV-674, 2023 WL 4295848 (N.D. Ohio June 30, 2023); *Wade v. Mancuso,* 2014-Ohio-1563, 111 N.E.3d 575, 579, at ¶ 11 (9th Dist.).  The Ohio Revised Code further provides that an action for wrongful death shall be brought in the name of the "personal representative of the decedent for the exclusive benefit of the surviving spouse, the children, and parents of the decedent ..."  Ohio R.C. 2125.02.  A wrongful death action in Ohio has three elements:  (1) the existence of a duty owed to the plaintiff's decedent; (2) a breach of that duty; (3) proximate causation linking the breach of the duty to the decedent's death.  *Johnson v. Miller,* No. 2:11-CV-00067, 2011 WL 3793497, *7 (S.D. Ohio Aug. 25, 2011).  *See also Wade, supra.*

G.  MOTION TO STRIKE IMPROPERLY-SUBMITTED EVIDENCE

{¶31}  Appellant filed a motion to strike the supplemental affidavit of Nick Gilreath, attached to Rumpke's reply memorandum in the trial court proceedings. " '[S]upplemental evidence is a permissible tool to support a motion for summary judgment.' " *New Technology Products Pty. Ltd., v. Scotts Miracle-Gro Co.,* 3d Dist. Union No. 14-21-22, 2022-Ohio-3780, ¶13 quoting *Kisielius v. Kisielius,* 3d Dist. Shelby Nos. 17-09-05, 17-09-11, 2009-Ohio-4624, ¶ 21.  " ' Decisions involving the admissibility of evidence are reviewed under an abuse-of-discretion standard of review.' " *DeepRock Disposal Solutions, LLC v. Forte Productions, LLC,* 4th Dist. Washington No. 20CA15, 2021-Ohio-1436, ¶ 40, quoting *Estate of Johnson v. Randall Smith, Inc.,* 135 Ohio St.3d 440, 2013-Ohio-1507, 989 N.E.2d 35, ¶ 22, (internal citations omitted).

{¶32}  If a party submits evidence that does not fall within Civ.R. 56(C)'s parameters, the opposing party may file a motion to strike the improperly-submitted evidence.  The determination of a motion to strike is within a court's broad discretion.  *Whitt v. Wolfinger*, 2015-Ohio-2726, 39 N.E.3d 809, ¶ 13 (4th Dist.);  *State ex rel. Dawson v. Bloom-Carroll Local School Dist.,* 131 Ohio St.3d 10, 2011-Ohio-6009, 959 N.E.2d 524, ¶ 23.  Consequently, absent an abuse of discretion an appellate court will not disturb a trial court's ruling regarding a motion to strike.  *State ex rel. Mora v. Wilkinson,* 105 Ohio St.3d 272, 2005-Ohio-

1509, 824 N.E.2d 1000, ¶ 10. A decision constitutes an abuse of discretion when it is unreasonable, arbitrary, or unconscionable. *State ex rel. Striker v. Cline,* 130 Ohio St.3d 214, 2011-Ohio-5350, 957 N.E.2d 19, ¶ 11. Moreover, when applying the abuse-of-discretion standard, a reviewing court may not substitute its judgment for that of the trial court. *See e.g., Berk v. Matthews,* 53 Ohio St.3d 161, 169, 559 N.E.2d 1301 (1990).

LEGAL ANALYSIS

{¶33} With the above legal standards and principles in mind, we turn first to legal analysis of Appellant's claims that Appellees Matthew Reed and Rumpke are liable for Mr. Payne's injuries and death based on the doctrine of negligence per se.

{¶34} Appellant contends that the accident reconstruction report performed by Neil Gilreath of Focus Investigations, LLC, on behalf of Rumpke and Reed demonstrates that Mr. Payne did not have sufficient visibility and warning of Rumpke's stopped garbage truck. Mr. Gilreath's February 20, 2020 report contained the following conclusions which he set forth in his affidavit of the same date, attached to the motion for summary judgment. Gilreath opined:

1. The Rumpke truck was stopped in front of 5588 Mount Tabor Road for approximately 16.75 seconds prior to the collision;

2. The Rumpke truck was clearly visible to the human eye for more than 10 seconds and more than 733 feet prior to the collision;

3. The Decedent had enough distance to perceive and react to the stopped Rumpke truck and avoid any type of collision;

4. The EDR data from Mr. Payne's vehicle shows that, for reasons unknown, he never detected the large, white Rumpke garbage truck prior to the collision;

5. Mr. Payne drove directly into the back of the truck without taking any type of evasive maneuvers, including trying to swerve or brake; and,

6. The position of the sun relative to the position of the Rumpke truck stopped in the roadway was not a factor in this collision.

{¶35} Nevertheless, Appellant argues that reasonable minds could conclude from the evidence that the violations of one or all of the following alleged violations of Ohio motor vehicle laws contributed to her husband's collision with the Rumpke truck. Appellant asserts that "[t]he fact that Gary Brent Payne did not see or react fast enough does not make him solely responsible for the collision, especially if Matthew Reed and the other Rumpke defendants did, or failed to do, things that made the Rumpke garbage truck less visible or noticeable for approaching vehicles." As will be discussed, all of Appellant's assertions of negligence per se must fail because they are all unsupported by the evidence adduced in this record and all the assertions are based upon pure speculation.

### G. ALLEGED VIOLATIONS OF OHIO MOTOR VEHICLE LAWS

{¶36} Appellant first contends that Rumpke and Matthew Reed violated R.C. 4513.071, "Stop lights required." This statute provides in pertinent part:

> (A) Every motor vehicle, * * * when operated upon a highway shall be equipped with two or more stop lights, * * *. Stop lights shall be mounted on the rear of the vehicle, actuated upon application of the service brake, * * *. Such stop lights when actuated shall emit a red light visible from a distance of five hundred feet to the rear * * *. Such stop lights when actuated shall give a steady warning to the rear of a vehicle * * * to indicate the intention of the operator to diminish the speed of or stop a vehicle.

Appellant cites the February 20, 2020 affidavits and reports of Nick Gilreath and Paul Jahn which indicate the Rumpke truck was parked on the roadway in front of the driveway of 5588 Mt. Tabor Road for approximately 16.0 to 16.75 seconds prior to the impact. Appellant argues this does not mean her husband was able to visualize the truck for that length of time prior to the impact.

{¶37} Appellant also cites Reed's testimony that the brake lights were not activated at the time of the accident. Matthew Reed testified that the rear of the Rumpke truck was equipped with strobe lights, taillights, and marker lights. He further testified that when he stopped the garbage truck in front of 5558 Mt. Tabor Road so that Clay could collect the trash at that location, the brake lights on the garbage truck were not activated. Appellant argues that the lack of displayed brake

lights failed to adequately warn Mr. Payne and led him to believe the truck was not actually stopped and/or caused him to delay applying the brakes on his own vehicle until it was too late to avoid the collision. [8]

{¶38} Based on the facts contained in this record, we find no evidence that Matthew Reed or Rumpke violated R.C. 4513.071. Trooper Dunn testified he issued no traffic citations to Reed or Rumpke. He testified in his opinion, Reed was not at fault in the accident. No person has provided evidence that a violation of the statute occurred at the time of Mr. Payne's accident. To argue that a violation occurred is speculation.

{¶39} Even if a violation had occurred, there is no evidence that such would have been the proximate cause of the collision between Payne's vehicle and the Rumpke truck. Causation is established using the "but for" test. *Rieger v. Giant Eagle*, 157 Ohio St.3d 512, 2019-Ohio-3745, 138 N.E.3d 1121, at ¶12; *Anderson v. St. Francis-St. George Hosp., Inc.,* 77 Ohio St.3d 82, 84-85, 671 N.E.2d 225

---

[8] Appellees Rumpke and Reed first defended this allegation on the basis that Appellant never alleged a violation of R.C. 4513.071 in the refiled complaint, but made this allegation for the first time in the memorandum contra the motion for summary judgment. Appellees have addressed this procedural irregularity in the reply memorandum and on appeal. Appellees have addressed the merits of the unpled violation only "in an abundance of caution." This court recently addressed an identical argument in *Kerns v. Hale,* 2023-Ohio-1175, 212 N.E.3d 451. Citing case law from other Ohio appellate districts which have held that "Ohio law does not require negligence per se to be pled with particularity because negligence and negligence per se are closely intertwined concepts and Ohio's Civ.R. 8 requires only notice pleading," this court held that "consistent with [other Ohio appellate case law] Kerns properly raised an assured clear distance ahead claim in the trial court." *Id.* at ¶ 15. *See also Arnett v. Mong*, 2016-Ohio-2893, 65 N.E.3d 72, ¶ 8 (12th Dist.); *Gress v. Wechter,* 6th Dist. Huron No. H-12-023, 2013-Ohio-971; *Williams v. AVI Food Sys., Inc.,* 8th Dist. Cuyahoga No. 109222, 2020-Ohio-5001, ¶ 13; *Lone Star Steakhouse & Saloon of Ohio, Inc. v. Quaranta,* 7th Dist. Mahoning No. 01 CA 60, 2002 WL 924630, ¶ 42.

(1996). A defendant's conduct is the cause of the harm if the harm would not have occurred but for the defendant's act or failure to act. *Id.* (internal citations omitted).

{¶40} In *Sizemore v. Deemer,* 2021-Ohio-1934, 174 N.E.3d 5 (3d Dist.), the court of appeals held that Deemer's alleged violation of a city parking ordinance was not the proximate cause of Carl Sizemore's death. A magistrate rendered a judgment on the matter and found that Deemer's vehicle, even if it was illegally parked, was not the proximate cause of Sizemore's injuries and death. The magistrate reasoned:

> In this regard, Scott Deemer could not reasonably anticipate that another person's car would break down, that the person would push their car, lose control, and crash into his parked car. It is not foreseeable that someone would push and lose control of their car, crashing into their car. The parked car of Scott Deemer merely provided a condition by which the plaintiff's injuries were made possible. It was not the proximate cause of the injury.

{¶41} Furthermore, the magistrate also found that the only person actively moving was Sizemore, and he was actually operating or maneuvering his vehicle without reasonable control in violation of R.C. 4511.02. The trial court overruled objections to the magistrate's decision. When the case made its way to the Third District, the appellate court explained:

> Importantly, "cause in fact" is not the same as proximate cause and does not fulfill the entirety of the negligence causation

requirement. *Columbus v. Wood,* 10th Dist. Franklin No. 15-AP-1105, 2016-Ohio-3081, at ¶ 11. Rather, "[t]he two types of causation are distinct." *Id.*, citing *Ackison v. Anchor Packing Co.,* 120 Ohio St.3d 228, 2008-Ohio-5243, 897 N.E.2d 1118, ¶ 48.

*See Sizemore* at ¶ 21.

"To establish proximate cause, foreseeability must be found." *Id.* If the harm is the natural and probable consequence of an act, and it should have been foreseen in view of all the attending circumstances, the harm becomes the proximate result of the act. *Mussivand v. David,* 45 Ohio St.3d 314, 321, 544 N.E.2d 265 (1989). There may be more than one proximate cause to an injury. *McDougall v. Smith*, 191 Ohio App.3d 101, 2010-Ohio-6069, 944 N.E.2d 1218, ¶ 5 (3d Dist.).

*See Sizemore* at ¶ 22.

It is important to emphasize that an intervening act can break the causal connection between negligence and injury. *Id.* "The test * * * is whether the original and successive acts may be joined together as a whole, linking each of the actors as to the liability, or whether there is a new and independent act or cause which intervenes and thereby absolves the original negligent actor." *Cascone v. Herb Kay Co.,* 6 Ohio St.3d 155, 160, 451 N.E.2d 815 (1983).

*See Sizemore* at ¶ 23.

{¶42} The *Sizemore* court discussed the trial court's finding that the lack of proximate cause attributable to the owner of the parked vehicle in Sizemore's case was significant because Sizemore was violating the law himself by operating his vehicle without reasonable control in violation of R.C. 4511.202, leading to the

only reasonable conclusion that Sizemore's independent and intervening acts were the cause of his tragic death. The *Sizemore* court concluded:

> As a result, we find that reasonable minds could not conclude that any parking violation by Deemer, even assuming that such occurred, was the proximate cause of Sizemore's death, particularly given Sizemore's own actions.

*Id.* at *¶26. See also Roth v. B.F.I. Waste Systems of Ohio, Inc.,* 7th Dist. Mahoning No. 98CA242, 2000 WL 652545 (May 12, 2000) (While there was evidence that Appellant's windows were covered with ice, record was clear that Appellees met their evidentiary burden by demonstrating that the collision was proximately caused solely as a result of Appellant's failure to yield the right of way to garbage truck traveling lawfully through an intersection).

{¶43} Similarly, even if Reed somehow violated R.C. 4513.071, such was not the proximate cause of the collision between Payne's vehicle and the Rumpke truck. Assuming the sun glare was a problem, as passersby indicated to Trooper Dunn, Matthew Reed could not reasonably assume that while he stopped to service trash customers on his route Mr. Payne would drive straight into glaring sun at 50 miles per hour and straight into the back of a parked garbage truck. As in *Sizemore,* a lack of proximate cause may be attributed to Reed because as in *Sizemore,* Mr. Payne failed to exercise ordinary care and violated the Ohio motor vehicle laws by failing to maintain an assured clear distance ahead. Payne's

independent and intervening acts are unfortunately the cause of the collision and his death.[9]  Reasonable minds could not conclude that Matthew Reed, even assuming he violated R.C. 4513.071, was the proximate cause of Mr. Payne's death, particularly in light of Mr. Payne's own driving actions.

{¶44} Appellant next contends that Rumpke and Matthew Reed violated R.C. 4513.17, "Number of lights permitted; limitations on red and flashing lights."  This statute provides that flashing lights are prohibited on motor vehicles except as follows:

> [s]tationary waste collection vehicles actively collecting garbage, refuse, trash, * * * provided such vehicles are equipped with and display, when used on a street or highway for the special purpose necessitating such lights, a flashing, oscillating, or rotating amber light * * *.

R. C. 4513.17(C)(1)(a).

{¶45} Matthew Reed testified that container/safety locks hang down from the back of the Rumpke garbage truck when it is in operation.  He further testified the container locks hang down toward the outer edges of the truck which is directly over the bottom flashing strobe lights, thus blocking

---

[9] In *Hollingshead v. Utility Solutions of Ohio*, 5th Dist. Licking No. 2020CA0081, 2021-Ohio-3151, the Fifth District observed at ¶41:

"[S]un glare is something any driver faces at certain times on sunny days when the road is angled directly east or west. * * * If drivers are excused under these circumstances, no driver would have to exercise reasonable care." *Pleimann v. Coots,* Green App. No. 2002-CA-54, 2003-Ohio-316, at ¶ 15.  The driver of an automobile has a duty to " 'stop his machine whenever he is so blinded as to be unable to see the way in front of him.' " *Pleimann*, *supra*, at ¶17, quoting *Parnell v. Bell,* 117 Ohio App. 125, 129-130, 191 N.E.2d 220 (1st Dist.1962).

them from visibility at times. Appellant contends that the OSHP photographs demonstrate a clear violation of R.C. 4513.17's requirement to display flashing, oscillating, or rotating amber lights on garbage trucks, and concludes that this violation would have contributed to the cause of the accident.[10] Furthermore, Appellant asserts that even if Rumpke attempts to argue that the rear upper strobe lights on the truck should have provided sufficient notice, this argument would be disproven by Rumpke's own accident reconstruction report.[11]

{¶46} Again, Appellant engages in speculation. There is no evidence that Rumpke violated R.C. 4513.17 and committed negligence per se. Trooper Dunn did not testify to a violation of this statute, nor did he issue any citation based on a violation. No other witness has provided testimony demonstrating a violation. And as discussed above, even if a violation had occurred, such would not be the proximate cause of the collision between the Payne vehicle and the Rumpke truck. Reasonable minds could not conclude that, even if a violation had occurred, Mr. Reed or Rumpke proximately caused this accident.

---

[10] Appellees have also pointed out that if the safety locks partially covered the strobe lights, this allegation would potentially form the basis for a products' liability claim against the manufacturer of the garbage truck.

[11] As will be addressed later at pages 28-31 of her brief, Appellant sets forth extensive argument, based upon the accident reconstruction report photographs and calculations, as well as the photographs taken by the OSHP, that Mr. Payne clearly would have had less distance and time than needed to stop his vehicle before colliding with the rear of the garbage truck.

{¶47} Appellant's next contention is that Matthew Reed committed negligence per se when he violated R.C. 4511.68, "Parking prohibitions."[12] This statute provides:

> (A) No person shall stand or park a trackless trolley or vehicle, except when necessary to avoid conflict with other traffic or to comply with sections 4511.01 to 4511.78, 4511.99, and 4513.01 to 4513.37 of the Revised Code, or while obeying the directions of a police officer or a traffic control device, in any of the following places: * * *
> (2) In front of a public or private driveway * * *.

{¶48} Reed's testimony was clear that immediately prior to the accident, he stopped the Rumpke garbage truck in front of the driveway of 5588 Mt. Tabor Road to service the customers at that address. Without further argument, Appellant contends that reasonable minds could conclude from this evidence that Reed's violation of R.C. 4511.68, when combined with the failure to display brake lights as discussed above, contributed to the July 27, 2018 collision.

{¶49} Rumpke responds that Reed's action may be distinguished as a "stop" as opposed to "parking." Rumpke directs us to the additional language of the statute which provides that one may park, "except when necessary to avoid conflict with other traffic." Reed stopped the garbage

---

[12] This statute was re-enacted, April 15, 2021, with no change from the March 2018 statute in effect at the time of Payne's accident.

truck in the northbound lane in order to perform his job as well as avoid other traffic.

{¶50} Based upon our review, the only evidence in the record is that Reed stopped the truck briefly in the northbound lane in order to service the customers. He testified he was stopped "less than a minute." Trooper Dunn did not find this to be a contributing cause of the accident. Reasonable minds could not find that Matthew Reed proximately caused the collision when Mr. Payne inexplicably drove into the back of the Rumpke truck, thereby failing to maintain an assured clear distance ahead.

{¶51} Appellant next contends that Matthew Reed violated R.C. 4511.25, "Lanes of travel upon roadways." This statute provides:

> (A) Upon all roadways of sufficient width, a vehicle or trackless trolley shall be driven upon the right half of the roadway, except as follows:
>
> (1) When overtaking and passing another vehicle proceeding in the same direction, or when making a left turn under the rules governing such movements: * * * .

{¶52} Citing the Geotab Device Data Report obtained from the Rumpke truck, Appellant argues Reed operated the Rumpke garbage truck in the wrong (left, southbound) lane for a good portion of the distance when traveling between 5519 Mt. Tabor Road and 5588 Mt. Tabor Road.

Therefore, Mr. Payne would not have had any reason to yield or slow his vehicle down while the Rumpke garbage truck was in the wrong lane of Mt. Tabor Road. Appellees, however, contend that this allegation is not supported by the evidence. Matthew Reed testified he backed into 5519 Mt. Tabor Road to collect the trash there. After doing so, he operated the Rumpke truck left out of the driveway and towards the next stop, 5588 Mt. Tabor Road, on the other side of the road. In doing so, Reed did cross the southbound lane into the northbound lane. However, the collision occurred in the northbound lane and Reed was stopped at the time of the impact.

{¶53} Again, our review demonstrates that nothing in evidence indicates Reed violated R.C. 4511.25. Nothing about Mr. Reed's action in crossing the southbound lane suggests this action contributed to the accident. Trooper Dunn made no mention of this action and did not find a violation of this law occurred. Reasonable minds cannot conclude that even if Mr. Reed somehow violated this statute that this would have proximately caused the collision with Mr. Payne's vehicle.

{¶54} Appellant next contends that Matthew Reed violated R.C. 4511.79, "Driving with impaired alertness or ability; use of drugs." This statute provides in pertinent part:

(A) No person shall drive a "commercial motor vehicle" as defined in section 4506.01 of the Revised Code, or a "commercial car" or "commercial tractor," as defined in section 4501.01 of the Revised Code, while the person's ability or alertness is so impaired by fatigue, illness, or other causes that it is unsafe for the person to drive such vehicle.  No driver shall use any drug which would adversely affect the driver's ability or alertness.

(B) No owner, as defined in section 4501.01 of the Revised Code, of a "commercial motor vehicle," "commercial car," or "commercial tractor," or a person employing or otherwise directing the driver of such vehicle, shall require or knowingly permit a driver in any such condition described in division (A) of this section to drive such vehicle upon any street or highway.

{¶55} Appellant cites Reed's deposition testimony that he could not recall whether or not he was wearing his glasses at the time of the accident.  Reed further testified that after he stopped at 5588 Mt. Tabor Road, he was looking in the truck mirrors and "most definitely" would have been able to see any approaching vehicles.  Appellant argues that despite looking in the mirror, Reed did not see Payne's vehicle until after the collision occurred.  Appellant concludes that Reed's violation of R.C. 4511.79 by failing to wear his glasses, and perhaps take evasive action, contributed to the collision.

{¶56} However, as Rumpke notes, there is no evidence that Reed was impaired at the time of the accident.  Reed was not cited for failing to wear his glasses or any intoxication or impairment.  Trooper Dunn testified he had

no suspicion that Mr. Reed was impaired. Appellant's assertion is mere speculation. Reasonable minds could not conclude that Reed's failure to wear his glasses proximately caused the collision.

{¶57} Appellant also contends that Matthew Reed violated R.C. 4511.20, "Willful or wanton disregard of safety on highways." This statute provides in pertinent part: "No person shall operate a vehicle, trackless trolley, or streetcar on any street or highway in willful or wanton disregard of the safety of persons or property." Appellant argues that Reed's operation of his garbage truck without brake lights displayed, with strobe lights covered or otherwise inadequate, while stopped on the roadway and not wearing his glasses constitutes willful and wanton disregard of safety which contributed to the accident. Appellees respond that there is no evidence that Mr. Reed's actions were willful or wanton.

{¶58} We agree with Appellees that there is no evidence Mr. Reed acted willfully or wantonly with regard to his operation of the Rumpke garbage truck. The term "willful and wanton misconduct" connotes behavior demonstrating a deliberate or reckless disregard for the safety of others. *Easterling v. Am. Olean Tile Co., Inc.,* 75 Ohio App.3d 486, 600 N.E.2d 1088, 1092 (4th Dist.1991); *Fabrey v. McDonald Police Dept.,* 70 Ohio St.3d 351, 356, 639 N.E.2d 31 (1994). Willful conduct involves an intent, purpose or design to injure. *Easterling, supra*; *McKinney v. Hartz & Restle Realtors, Inc.,* 31 Ohio St.3d 244, 246, 510 N.E.2d

386, 388 (1987); *Denzer v. Terpstra*, 129 Ohio St. 1, 193 N.E. 647 (1934), at paragraph two of the syllabus.  Wanton conduct is a failure to exercise any care whatsoever toward those to whom a duty is owed under circumstances in which there is great probability that harm will result.  *Easterling, supra; McKinney, supra*, 31 Ohio St.3d at 246, 510 N.E.2d at 388; *Hawkins v. Ivy*, 50 Ohio St.2d 114, 363 N.E.2d 367 (1977), at syllabus.  " 'Mere violation of a statute, without more, does not constitute willful and wanton misconduct.' " *Easterling, supra,* quoting 70 Ohio Jurisprudence 3d (1986) 124, Negligence, Section 53.  In this case there is no evidence that Matthew Reed engaged in conduct which can be said to have demonstrated deliberate and/or reckless disregard for others' safety.  Reasonable minds could not conclude that Matthew Reed's conduct in the operation of a Rumpke truck to service customers was willful or wanton and proximately caused this motor vehicle collision.

{¶59} None of the physical, testimonial, or documentary evidence in this case shows that Matthew Reed and/or Rumpke violated the above-listed statutes.  Even if the evidence demonstrated violations of one or more of the motor vehicle laws, said violations would not have contributed to the accident.  Mr. Payne's own driving actions were an independent and intervening cause of the unfortunate accident which took his life.

F.  ALLEGATIONS OF GENERAL NEGLIGENCE

{¶60} Appellant contends that Matthew Reed and the Rumpke defendants were "negligent in other ways, that the Rumpke defendants are vicariously liable for Matthew Reed's negligent acts, and the negligence of Matthew Reed and the Rumpke defendants caused Gary Payne's injuries and death, as well as his next-of-kin's resulting wrongful death damages."  Without further argument, Payne asserts that this court should reverse the trial court's order granting summary judgment and dismissing the case.  Once again, this vague argument is unsupported and constitutes pure speculation.

{¶61} " ' "A successful negligence action requires a plaintiff to establish that:  (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached the duty of care; and (3) as a direct and proximate result of the defendant's breach, the plaintiff suffered injury." ' "  *Gibbs v. Mark Porter Autoplex, Inc.,* 4th Dist. Meigs No. 23CA3, 2023-Ohio-3460, ¶18, quoting *Stubbs v. Sybene Missionary Baptist Church, Inc.,* 4th Dist. Lawrence No. 20CA9, 2021-Ohio-3454, ¶ 16, quoting *Allen v. Rankin*, 4th Dist. Pickaway No. 12CA10, 2013-Ohio-456, ¶ 21. While Matthew Reed had a duty of ordinary care in the operation of the Rumpke truck, there is absolutely no evidence that he breached the duty of ordinary care and that Mr. Payne died as a direct and proximate result of Reed's or Rumpke's alleged actions or inactions.  The only evidence is that Mr. Payne breached his

duty of ordinary care and drove directly into the back of the stopped Rumpke vehicle, thus violating his duty to maintain an assured clear distance.

## H. ALTERNATIVE THEORIES OF LIABILITY

{¶62} Having found that reasonable minds could not find liability on the part of Rumpke's employee, Matthew Reed, it naturally continues that no liability can be found on the part of Rumpke under theories of respondeat superior/vicarious liability or negligent entrustment. Moreover, having found that reasonable minds could not find liability on the part of Matthew Reed or Rumpke, Appellant cannot sustain her wrongful death claim which requires proof of a wrongful act, neglect, or default. *See Everhart v. Coshocton Cty. Mem. Hosp.*, 2022-Ohio-629, 186 N.E.3d 232, at ¶14 (10th Dist.), appeal accepted for review, 167 Ohio St.3d 1442, 2022-Ohio-2162, 189 N.E.3d 818 (Table). We find no merit to these arguments asserted on appeal.

## I. CONCLUSION AS TO THE FIRST ASSIGNMENT OF ERROR

{¶63} There can be no doubt that the July 27, 2018 motor vehicle collision in which Gary Brent Payne lost his life was a tragedy causing unspeakable grief for his family and friends. Due to his death, no one can know exactly how and if the sun glare potentially affected Mr. Payne. No one can know exactly what he did or did not observe prior to the impact. However, Appellant's claims against Rumpke and Reed must fail because of a lack of evidence on the elements of breach, duty,

and proximate cause. There is simply no way to find that Matthew Reed, and therefore Rumpke, were responsible for the accident and Mr. Payne's resulting death. Appellant has failed to produce evidence creating a genuine issue of material fact as to whether or not Matthew Reed was negligent and, even if so, whether any such negligence was a proximate cause of the collision. Furthermore, having found no liability attributable to Matthew Reed, Appellant's theories of respondeat superior/vicarious liability, negligent entrustment, and wrongful death cannot lie. Based on our de novo review, we find that the trial court did not err in finding no genuine issues of material fact and that the court properly granted judgment to Appellees Mathew Reed and Rumpke as a matter of law. Reasonable minds could only conclude that Matthew Reed was not negligent and did not proximately cause Mr. Payne's injuries and subsequent death. Therefore, Appellant's second assignment of error is without merit and accordingly, is overruled.

### J. APPELLANT'S MOTION TO STRIKE AND CONCLUSION AS TO THE FIRST ASSIGNMENT OF ERROR

{¶64} Under the first assignment of error, Appellant concedes that Mr. Gilreath's February 20, 2020 affidavit and February 14, 2020 expert report were properly submitted with Rumpke's motion for summary judgment. However, after Appellant filed her brief in opposition to the motion for summary judgment on

March 7, 2022, Rumpke filed a reply brief and submitted a new affidavit from

Nick Gilreath.  The supplemental Gilreath affidavit was dated March 14, 2022 and

supported Rumpke's reply.  Appellant contends that the trial court should not have

considered the supplemental affidavit, characterizing the matter as "summary

judgment by ambush."  Thus, Appellant filed a motion to strike Gilreath's

supplemental affidavit which the trial court presumably overruled.[13]

{¶65} Appellant argued in her motion to strike that Paragraphs 8 through 16

of the supplemental affidavit contained new opinions and conclusions that were not

set forth in the original affidavit submitted with the motion for summary judgment.

In her appellate brief, Appellant summarizes the issue as to the alleged improperly

submitted evidence as follows:

> [I]n his March 14, 2022 Affidavit, Mr. Gilreath provides new
> opinions regarding Gary Brent Payne's perception reaction time in
> Paragraph Nos. 9, 13, and 14 (which he now claims was only 1.5
> seconds even though he used 2.0 seconds throughout his February 14,
> 2020 expert report and February 20, 2020 Affidavit); new opinions
> regarding the time that Mr. Payne needed to slow/stop his vehicle if
> he slammed on his brakes based upon a 2.0 second perception reaction
> time in Paragraph No. 12; and new opinions regarding the time and
> distance that Mr. Payne needed to slow/stop his vehicle based upon a
> 1.5 second perception reaction time in Paragraph No. 14.

---

[13] When a trial court does not expressly rule upon a motion, it is deemed denied when a court enters final judgment. *Caterpillar Financial Services Corporation v. Tatman,* 2019-Ohio-211, 137 N.E.3d 512, at ¶26 (4h Dist.), citing *Comisford v. Erie Ins. Property Cas. Co.,* 4th Dist. Gallia No. 10CA3, 2011-Ohio-1373, 2011 WL 1085147, ¶ 24

{¶66} Appellant contends that Rumpke realized that the collision was not avoidable for Mr. Payne based upon the prior calculations contained in Gilreath's original affidavit and expert report. Thus, to avoid denial of summary judgment, Appellant asserts that Rumpke had Mr. Gilreath create a new affidavit with new facts, assumptions, and opinions. Appellant concludes that the trial court did not have discretion to admit and consider Gilreath's supplemental affidavit when Civ.R. 56(C) prohibits such a submission. Accordingly, Appellant requests this court reverse the trial court's denial of the motion to strike and the trial court's order granting summary judgment and remand this case.

{¶67} In response, Rumpke argues that Mr. Gilreath's supplemental affidavit did not include any new opinions or conclusions. Rather, the supplemental affidavit rebutted inaccurate statements and clarified Gilreath's opinions that Appellant either mischaracterized or else simply did not understand. Rumpke asserts that a reply brief may contain a supplemental affidavit where the reply rebuts arguments set forth in the brief opposing motion for summary judgment and clarifies previously raised issues. *See Bank of New York Mellon v. Fisher,* 8th Dist. Cuyahoga No. 108855, 2020-Ohio-4742, at ¶17.

{¶68} We first begin by observing that because the trial court did not rule on Appellant's motion to strike the supplemental affidavit does not also mean that the trial court considered either the original Gilreath affidavit or the supplemental

affidavit. The trial court's decision granting judgment to Rumpke and Reed upon all claims between the parties is silent as to the court's reasons. Obviously, the trial court agreed with Appellees Rumpke and Reed although it did not provide an explanation for the ruling.

{¶69} Moreover, to ultimately prevail on her claims for negligence, negligence per se, respondeat/superior, negligent entrustment, and wrongful death, it was incumbent upon Appellant to prove that Rumpke and Reed owed Mr. Payne a duty of care, that they breached that duty, and that the breach proximately caused his injury. *See generally Six v. Gahanna Trailer Services,* 10th Dist. Franklin No. 16AP-91, 2017-Ohio-7131, at ¶24; *Mussivand v. David,* 45 Ohio St.3d 314, 318 (1989). On summary judgment, Appellant was required to produce evidence such that a material issue of fact concerning at least one of these issues necessitated a trial to determine it. Appellant was unable to meet this requirement.

{¶70} In this case, we are unable to know if the trial court relied on either the original or supplemental affidavit. Even if the trial court did erroneously decline to strike the supplemental affidavit, the error would be harmless because the expert reconstruction report and accompanying original affidavit were actually irrelevant to the trial court's, and now this court's, analysis. The information contained in the accident reconstruction report and Gilreath's original and supplemental affidavits was not needed to support the motion for summary

judgment.  Appellant failed to present any evidence on the crucial element of proximate cause attributable to Rumpke or Matthew Reed.  *See Carter v. U-Haul Internat.,* 10th Dist. Franklin No. 09AP-310, 2009-Ohio-5358, at ¶13; *Wooten. v. CSX RR,* 164 Ohio App.3d 428, 2005-Ohio-6252, 842 N.E.2d 603, at ¶38 (2d Dist.).

{¶71}  Furthermore, the trial court could not have simply accepted Appellant's interpretation of the perception/reaction times contained in Gilreath's accident reconstruction report, as argued in her memorandum contra, without properly submitting the alternative interpretation of Gilreath's opinions by an expert within a properly-framed affidavit attached to the memorandum contra.  *See Thombre v. Grange Insurance Co.,* 6th Dist. Lucas No. L-21-1014, 2021-Ohio-3998, at ¶22.  " 'Where the inquiry pertains to a highly technical question of science or art to a particular professional or mechanical skill, expert testimony is required.' " *See Epiq Construction Services, supra,* at ¶ 40, quoting *Jones v. Hawkes Hosp.,* 175 Ohio St. 503, 196 N.E.2d 592 (1964), paragraph one of the syllabus.  " 'Experts have the knowledge, training and experience to enlighten the jury concerning the facts and their opinion regarding the facts.' " *Epiq, supra,* quoting *Ramage v. Cent. Ohio Emergency Servcs. Inc.,* 64 Ohio St.3d 97, 102, 592 N.E.2d 828 (1992).  Documents submitted in opposition to a motion for summary judgment that are not sworn, certified, or authenticated by affidavit have no

evidentiary value and may not be considered by the court in deciding whether a genuine issue of material fact remains for trial. *See generally, Thombre, supra*, at ¶14. Without even attaching one sworn affidavit from an expert explaining an alternative interpretation of the highly technical information and opinions regarding perception/reaction times contained in Gilreath's report and affidavit, Appellant attempted to counter and construe Gilreath's own opinions on these issues in the memorandum in opposition to Appellees' motion for summary judgment. On such highly technical issues, expert testimony was required.

{¶71} Nevertheless, had Appellant properly supported the arguments contained in her memorandum contra, such would not have created genuine issues of material fact, given the absence of any evidence of negligence attributable to Matthew Reed or Rumpke. Given that the trial court need not have relied on the information contained in either or both of the Gilreath affidavits, we need not reach the issue of whether the trial court abused its discretion by failing to grant Appellant's motion to strike the supplemental one. Consequently, we overrule the first assignment of error.

{¶72} Having found no merit to either of Appellant's assignments of error, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Wilkin, J. & Hess, J., Concurring in Judgment and Opinion.


For the Court,


BY:    _____
         Jason P. Smith, Presiding Judge


## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**